UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL  'O'

| Case No. | 2:17-cv-01474-CAS(PLAx) | Date | April 28, 2017 |
|---|---|---|---|
| Title | HANSEN ET AL. v. SCRAM OF CALIFORNIA, INC. ET AL. | | |

Present: The Honorable **CHRISTINA A. SNYDER**

| Catherine Jeang | Not Present | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:  Attorneys Present for Defendants:

Not Present  Not Present

**Proceedings:** (IN CHAMBERS) - DEFENDANTS' MOTION TO DISMISS (Dkt. 10, filed March 31, 2017)

The Court finds this motion appropriate for decision without oral argument. See Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15. Accordingly, the hearing date of May 1, 2017 is vacated, and the matter is hereby taken under submission.

## I. INTRODUCTION

On February 23, 2017, plaintiffs Roseanne Hansen and Jennifer Oh filed this class action against defendants Scram of California, Inc. ("Scram") and Alcohol Monitoring Systems ("AMS"). Dkt. 1 ("Compl."). Plaintiffs assert four claims: (1) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 et seq. ("UCL"); (2) violation of California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 et seq. ("FAL"); (3) violation of California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 et seq. ("CLRA"); and (4) fraud, deceit, and/or misrepresentation. The gravamen of plaintiffs' claims is that defendants mispresent the capabilities of the transdermal alcohol monitoring devices that AMS manufactures and Scram distributes.

On March 31, 2017, Scram filed the instant motion to dismiss. Dkt. 10 ("MTD"). On April 6, 2017, AMS filed a notice of its joinder in Scram's motion. Dkt. 13. On April 14, 2017, plaintiffs filed their opposition.[1] Dkt. 15. On April 17, 2017, defendants filed a reply. Dkt. 17.

---

[1] Defendants argue that, pursuant to Local Rule 7-12, the Court should grant defendants' motion because plaintiffs' opposition was due on April 10, 2017 and was, therefore, not timely filed. Dkt. 17 at 2. Despite plaintiffs' untimely filing, the Court

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| Case No. | 2:17-cv-01474-CAS(PLAx) | Date | April 28, 2017 |
|---|---|---|---|
| Title | HANSEN ET AL. v. SCRAM OF CALIFORNIA, INC. ET AL. | | |

Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II. BACKGROUND

Plaintiffs allege the following facts.

AMS is a nationwide provider of alcohol monitoring devices and services to state and federal law enforcement agencies, courts, as well as other private entities such as rehabilitation centers. Compl. ¶ 6. Scram is a local distributer and provider of AMS's devices and services in California. Id. ¶ 7.

AMS's alcohol monitoring device (the "Device") is a transdermal monitoring device that was designed to detect and record any instances when a wearer consumes alcohol by detecting alcohol vapors caused by ingested alcohol diffusing through the skin. Id. ¶ 13. The Device is worn on the user's ankle. Id. Because transdermal alcohol monitoring measures the amount of alcohol evaporating through the wearers' skin, the Device is inherently susceptible to detecting "false-positive" alcohol readings as a result of "environmental alcohol," i.e., alcohol vapors encountered on an everyday basis from products including cologne, aftershave, hand sanitizer, household cleaners, and gasoline. Id. ¶¶ 20–21. Individuals who purchase defendants' alcohol monitoring services are not made aware of the risk of false-positive results, and defendants misrepresent this risk. Id. ¶¶ 25.

Defendants provide alcohol monitoring services to individuals as part of court mandated rehabilitation programs, as a condition of probation or bond, or other purposes related to the criminal justice system. Id. ¶ 14. In such cases, individuals subject to alcohol monitoring enter into private contracts with defendants, which charge such individuals monthly fees. Id. ¶ 15. Ordinarily, users wear the Device at all times and remove it only once per day to connect the Device to an internet-enabled docking station to upload the monitoring data. Id. ¶ 17. The monitoring data is set to AMS, which applies an algorithm to approximate the blood alcohol content of the wearer based on the amount of alcohol vapor detected at the skin's surface. Id. ¶¶ 19, 37. AMS analyzes this date to determine whether an "alcohol consumption event" occurred. Id. ¶ 36. If AMS concludes that the alcohol vapor readings were caused by an "alcohol consumption

---

considers plaintiffs' opposition, as it has the discretion to do under Local Rule 7-12. See C.D. Cal. L.R. 7-12.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**      'O'

| Case No. | 2:17-cv-01474-CAS(PLAx) | Date | April 28, 2017 |
|---|---|---|---|
| Title | HANSEN ET AL. v. SCRAM OF CALIFORNIA, INC. ET AL. | | |

event," defendants inform the relevant law enforcement agency or court exercising jurisdiction over the wearer that the individual had consumed alcohol. Id. ¶ 38. However, defendants do not inform the wearer of the Device that an "alcohol consumption event" has occurred. Id. ¶ 39. Furthermore, the Device does not notify wearers in real-time when it detects alcohol vapors. Id. ¶ 40. As a result, when defendants report an "alcohol consumption event" to a law enforcement agency or court, customers who use the device as a condition of their bond or probation are unable to obtain time-sensitive evidence—e.g., a blood or breath alcohol test—to challenge to any resulting revocation of their bond or probation. Id. ¶¶ 41–43.

Defendants advertise the Device as a cost-effective and accurate alternative for law enforcement agencies and courts to track the alcohol usage of at-risk individuals, including those charged with driving under the influence or other crimes relating to alcohol consumption. Id. ¶ 16. Defendants also advertise to the public and the governmental agencies with which they seek to work that the Device can determine the difference between alcohol vapors arising from ingested alcohol and alcohol vapors arising from environmental alcohol. Id. ¶ 24. Defendants claim they can distinguish between alcohol vapor readings caused by "alcohol consumption events" and readings caused by environmental alcohols because the rate of alcohol dissipation is purportedly different for environmental alcohol vapors as compared with ingested alcohol vapors. Id. ¶ 35.

Plaintiffs recount two instances involving third parties in which courts rejected results from the Device as biologically impossible and scientifically unreliable. Id. ¶¶ 27–30. Plaintiffs cite a study that concluded that the "methodology used by AMS cannot separate ethanol from other contaminating alcohols and therefore is not a reliable method." Id. ¶ 31. Ingested alcohol is comprised of ethanol. Id.

Plaintiffs also contend that they experienced false-positive results using the Device. For example, plaintiff Hansen was arrested and charged with driving under the influence of alcohol. Id. ¶¶ 44–47. During the course of her criminal case, Hansen voluntarily entered herself into a residential alcohol treatment center. Id. ¶ 47. It appears that Hansen wore the Device while she was at the treatment facility. Id. ¶¶ 48–49. On February 7, 2016, Hansen tested negative when she took a breathalyzer test administered by her treatment center. Id. ¶ 50. On February 8, 2016, AMS sent a report to Scram indicating that Hansen had consumed alcohol for a day-long period. Id. ¶ 49. Defendants then generated a report stating that Hansen consumed alcohol. Id. Defendants were not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | 2:17-cv-01474-CAS(PLAx) | Date | April 28, 2017 |
| Title | HANSEN ET AL. v. SCRAM OF CALIFORNIA, INC. ET AL. | | |

aware that Hansen resided in a rehabilitation center. Id. Scram submitted this report to Hansen's attorney and to court. Id. ¶ 51. When Hansen's attorney notified Hansen of this report, Hansen provided the report to her treatment facility, where she again tested negative for alcohol consumption. Id. Hansen subsequently visited a licensed medical lab where her urine sample was tested for drugs and alcohol; Hansen tested negative. Id. ¶ 52. Plaintiffs contend that defendants falsely represented to the court, Hansen's attorney, and Hansen that she had consumed alcohol for hours at a time, even though Hansen "scientifically proved that she did not consume any alcohol." Id. ¶ 53. As a result of defendants' report, Hansen was subject to an additional year of alcohol monitoring. Id. ¶ 54. Defendants profited from the extension of Hansen's monitoring. Id. ¶¶ 54–55. Hansen paid $6,400 to Scram, $300.00 for a urine test from a certified laboratory, and $2,000 in attorneys' fees to defend against the alleged alcohol consumption. Id. ¶¶ 56–58.

Had Hansen known that the Device registered false positive test results, that defendants did not timely inform the user when the Device was detecting the presence of alcohol vapors, and that defendants would not timely inform her once they had determined that an alcohol consumption event occurred, Hansen would not have agreed to purchase defendants' alcohol monitoring service as a condition of her bond. Id. ¶ 59.

Similarly, plaintiff Oh was charged with driving under the influence and her criminal case was postponed to permit Oh to enroll in the alcohol monitoring program run by Scram. Id. ¶¶ 60–63. Oh paid Scram $225 per week for its monitoring services and a $325 enrollment fee. Id. ¶ 64. Upon enrollment, Oh attended a seminar administered by a Scram employee, who instructed Oh not to consume alcohol or use any form of alcohol-related environmental products; this information was not provided in writing. Id. ¶ 65. Oh regularly complained about the monthly cost of the alcohol monitoring program and asked Scram if it would permit her to pay a reduced rate. Id. ¶ 66. A Scram employee denied Oh's request for a fee reduction and warned that if Oh did not pay her monthly fees, Scram would report to the trial court that Oh had violated her "Scram conditions." Id. As a result, Oh continued to pay her fees to Scram and AMS. Id. ¶ 67. On June 8, 2015—only weeks after Oh complained to her case manager about the high cost of the monitoring program—Oh's attorney received a report from defendants indicating that Oh was in violation of her monitoring conditions for consuming alcohol from June 5 to June 7, 2015. Id. ¶ 68. Defendants also provided this report to the trial court. Id. ¶ 73. The report indicated that Oh's transdermal alcohol concentration stayed constant for two days, which plaintiffs assert is a biological

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:17-cv-01474-CAS(PLAx) | Date | April 28, 2017 |
|---|---|---|---|
| Title | HANSEN ET AL. v. SCRAM OF CALIFORNIA, INC. ET AL. | | |

impossibility. Id. ¶¶ 70–71. Once aware of the report, Oh had her urine tested for alcohol at a state certified laboratory and the test was negative. Id. ¶ 73. Oh challenged defendants' report in court and the "trial Court was unable to come to a resolution[.]" Id. ¶ 74.

Oh paid $600 to Scram for their alcohol monitoring services, $130 for a certified urine test, and $1,000 in attorneys' fees to defend against the alleged alcohol consumption. Id. ¶¶ 75–77. Had Oh known that the Device registered false positive test results, that defendants did not timely inform the user when the Device was detecting the presence of alcohol vapors, and that defendants would not timely inform her once they had determined that an alcohol consumption event occurred, Oh would not have agreed to purchase defendants' alcohol monitoring service as a condition of her bond, or would have tried to locate a different monitoring company. Id. ¶ 78.

In support of their UCL claim, plaintiffs allege, inter alia, that defendants: (a) deceptively represented to plaintiffs that their products are reliable and can determine the presence of alcohol in the wearer's system, as opposed to the presence of environmental alcohols; (b) failed to adequately inform plaintiffs that the wearer should not use environmental alcohol products; and (c) failed to adequately inform plaintiffs that the Device had never been accepted into the scientific community. Id. ¶ 90. Plaintiffs relied on defendants' misrepresentations and would not have purchased or would have paid less for the Device had they been adequately informed. Id. ¶ 91. In support of their FAL claim, plaintiffs allege that defendants represented (by omission and commission) that the Device can prove "scientifically" that the wearer has consumed alcohol, even though defendants knew such representations to be false. Id. ¶ 103. In support of their fraud claim, plaintiffs allege that defendants deceptively led plaintiffs to believe that the Device was capable of making an accurate determination of alcohol consumption even if the wearer "tried on" environmental products that contained alcohol. Id. ¶ 121. Furthermore, defendants failed to notify plaintiffs that the Device was not "scientifically proven" and that the wearer would not be timely notified of a false positive result or an actual drinking episode. Id.

### III.  LEGAL STANDARDS

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. Under this Rule, a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          'O'

| Case No. | 2:17-cv-01474-CAS(PLAx) | Date | April 28, 2017 |
|---|---|---|---|
| Title | HANSEN ET AL. v. SCRAM OF CALIFORNIA, INC. ET AL. | | |

of sufficient facts alleged under a cognizable legal theory.'" Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level." Id.

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

Unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials). In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

Federal Rule of Civil Procedure 8(a) provides that a pleading stating a claim for relief must contain "a short and plain statement of the claim showing that the pleader is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:17-cv-01474-CAS(PLAx) | Date | April 28, 2017 |
| Title | HANSEN ET AL. v. SCRAM OF CALIFORNIA, INC. ET AL. | | |

entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to meet this standard, a claim for relief must be stated with "brevity, conciseness, and clarity." See Charles A. Wright & Arthur R. Miller, 5 Federal Practice and Procedure § 1215 (3d ed.). "The Plaintiff must allege with at least some degree of particularity overt acts which Defendants engaged in that support the Plaintiff's claim." Jones v. Community Redevelopment Agency, 733 F.2d 646, 649 (9th Cir. 1984). The purpose of Rule 8(a) is to ensure that a complaint "fully sets forth who is being sued, for what relief, and on what theory, with enough detail to guide discovery." McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996).

Federal Rule of Civil Procedure 9(b) requires that the circumstances constituting a claim for fraud be pled with particularity. Federal Rule of Civil Procedure 9(b) applies not just where a complaint specifically alleges fraud as an essential element of a claim, but also where the claim is "grounded in fraud" or "[sounds] in fraud." Vess v. CibaGeigy Corp. U.S.A., 317 F.3d 1097, 1103–04 (9th Cir. 2003). A claim is said to be "grounded in fraud" or "'sounds in fraud'" where a plaintiff alleges that the defendant engaged in fraudulent conduct and relies on solely on that conduct to prove a claim. Id. at 1103. "In that event, . . . the pleading of that claim as a whole must satisfy the particularity requirement of [Rule] 9(b)." Id. at 1103–04. However, where a plaintiff alleges claims grounded in fraudulent and non-fraudulent conduct, only the allegations of fraud are subject to heightened pleading requirements. Id. at 1104.

A pleading is sufficient under Rule 9(b) if it "[identifies] the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." Walling v. Beverly Enters., 476 F.2d 393, 397 (9th Cir. 1973). This requires that a false statement must be alleged, and that "circumstances indicating falseness" must be set forth. In re GlenFed Sec. Litig., 42 F.3d 1541, 1548 (9th Cir. 1994). Thus, Rule 9(b) requires a plaintiff to "identify the 'who, what, when, where and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent conduct], and why it is false." Cafasso, ex rel. United States v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1055 (9th Cir. 2011) (quoting Ebeid ex rel. United States v. Lungwitz, 616 F.3d 993, 998 (9th Cir. 2010)).

As a general rule, leave to amend a complaint that has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:17-cv-01474-CAS(PLAx) | Date | April 28, 2017 |
| Title | HANSEN ET AL. v. SCRAM OF CALIFORNIA, INC. ET AL. | | |

Co., 806 F.2d 1393, 1401 (9th Cir. 1986); see Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

## IV. DISCUSSION

### A. Quasi-Judicial Immunity and the Litigation Privilege

Defendants argue that plaintiffs' action is not, at bottom, a false advertising case; rather, defendants contend that all of plaintiffs' claims pertain to defendants' monitoring of an individual's alcohol consumption and reporting this information to a court. MTD at 3. As a result, defendants argue that they are entitled to quasi-judicial immunity. Id.

Quasi-judicial immunity is "extended in appropriate circumstances to non jurists who perform functions closely associated with the judicial process." In re Castillo, 297 F.3d 940, 948 (9th Cir. 2002) (quotation marks omitted). The Ninth Circuit "take[s] a functional approach to determining whether a nonjudicial officer is entitled to absolute quasi-judicial immunity by looking to the nature of the function performed and not to the identity of the actor performing it." Burton v. Infinity Capital Mgmt., 753 F.3d 954, 960 (9th Cir. 2014) (quotation marks omitted). "However, it is only when the judgment of an official other than a judge involves the exercise of discretionary judgment that judicial immunity may be extended to that nonjudicial officer." Id. (quotation marks omitted). Defendants do not assert that they exercise any discretion when they offer their services on behalf of courts. As such, the Court finds that defendants are not entitled to quasi-judicial immunity. Furthermore, reading the complaint in a light most favorable to plaintiffs, the Court cannot conclude that plaintiffs allege misconduct only as it relates to defendants' work on behalf of courts. Rather, plaintiffs allege that defendants have misrepresented the effectiveness of the Device to individual customers, law enforcement agencies, courts, and the general public. Compl. ¶¶ 16, 24, 35, 90–91, 103, 121.

Defendants also argue that they are protected by California's litigation privilege because plaintiffs' essential claim is that defendants communicated information about plaintiffs' consumption of alcohol to courts in connection with ongoing criminal matters. MTD at 4–5. The California litigation privilege "applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." Jacob B. v. Cty. of Shasta, 154 P.3d 1003, 1007 (Cal. 2007) (quotation marks omitted); see Cal. Civ. Code § 47(b). Reading the complaint in a light most favorable to plaintiffs, the Court cannot conclude that plaintiffs allege

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:17-cv-01474-CAS(PLAx) | Date | April 28, 2017 |
| Title | HANSEN ET AL. v. SCRAM OF CALIFORNIA, INC. ET AL. | | |

misconduct only as it relates to defendants' representations made during judicial proceedings. Rather, plaintiffs' claims rely on defendants' alleged misrepresentations made to plaintiffs and other similarly situated individuals. See Compl. ¶¶ 16, 24, 35, 90–91, 103, 121. Accordingly, the Court concludes that defendants are not entitled to the protection of California's litigation privilege.

### B. Plaintiffs' Fraud Claims

Defendants argue that plaintiffs fail to allege their common law fraud claim with sufficient particularity to satisfy Rule 9(b). MTD at 5–7. Plaintiffs do not contest this argument.

In addition to plaintiffs' common law fraud claim, the Court finds that plaintiffs' UCL, FAL, and CLRA claims also sound in fraud because each claim relies on defendants' allegedly fraudulent misrepresentations. See Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009) (where a plaintiff "allege[s] a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of that claim[,] . . . the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading . . . as a whole must satisfy the particularity requirement of Rule 9(b)."); In re Sony Gaming Networks & Customer Data Sec. Breach Litig., 903 F. Supp. 2d 942, 953–54 (S.D. Cal. 2012) ("Regardless of the title given to a particular claim, allegations grounded in fraud are subject to Rule 9(b)'s pleading requirements."). Because all of plaintiffs' claims sound in fraud, plaintiff must comply with the heightened pleading standard of Rule 9(b).

Plaintiffs allege that defendants made various misrepresentations regarding the use and effectiveness of the Device. However, plaintiffs do not allege who made such representations, when the misrepresentations were made, or how they were communicated. Plaintiffs assert that defendants' advertisements include misrepresentations, but plaintiffs do not describe the content of such advertisements or when plaintiffs viewed them. Because plaintiffs fail to "identify the who, what, when, where and how of the misconduct charged," the Court concludes that plaintiffs have not satisfied Rule 9(b). See Cafasso, 637 F.3d at 1055 (quotation marks omitted). Accordingly, the Court **GRANTS** defendants' motion to dismiss plaintiffs' claims.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| Case No. | 2:17-cv-01474-CAS(PLAx) | Date | April 28, 2017 |
|---|---|---|---|
| Title | HANSEN ET AL. v. SCRAM OF CALIFORNIA, INC. ET AL. | | |

### C. CLRA Notice

The CLRA requires that a plaintiff seeking damages first notify the prospective defendant of the alleged violations and afford the prospective defendant a thirty-day period to remedy the problem. Cal. Civ. Code § 1782. Plaintiffs seek both damages and injunctive relief pursuant to their CLRA claim. See Compl. ¶¶ 118–19. Defendants argue that plaintiffs failed to provide the requisite CLRA notice, MTD at 7–9, and plaintiffs do not dispute this. Compliance with the CLRA notice requirement is necessary to state a claim. Laster v. T-Mobile USA, Inc., 407 F. Supp. 2d 1181, 1195–96 (S.D. Cal. 2005). Accordingly, the Court finds that plaintiffs also fail to state a claim for damages under the CLRA because plaintiffs did not comply with the CLRA's notice requirement.

## V. CONCLUSION

In accordance with the foregoing, the Court **GRANTS** defendants' motion to dismiss plaintiffs' claims. Plaintiffs' claims are hereby **DISMISSED without prejudice**. Plaintiff shall have twenty-one (21) days from the date of this order to file an amended complaint addressing the deficiencies identified herein. Failure to do so may result in dismissal with prejudice.

IT IS SO ORDERED.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | CMJ | | |