Edwin I. Aimufua, Esq., SBN 186986
LAW OFFICES OF EDWIN I. AIMUFUA
17000 Ventura Blvd, Suite 201
Encino, California 91316
(818) 855-1118 (Telephone)
(818) 855-1101 (Facsimile)
eia@aimufualaw.com

*Attorneys for Plaintiffs and on behalf*
*of all others similarly situated*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSEANNE HANSEN, on behalf of herself and all others similarly situated; JENNIFER OH, on behalf of herself and all others similarly situated: LINDA SOLTIS, on behalf of herself and all others similarly situated; BROOKE HOFFMAN, on behalf of herself and all others similarly situated; PATRICK GUERRERO, on behalf of himself and all others similarly situated; MICAH BAILEY, on behalf of himself and all others similarly situated; CHRISTINA BOHNSTEDT, on behalf of herself and all others similarly situated: | Case No.: 2:17-cv-01474-CAS-(PLAx)<br><br>Honorable Christina A. Snyder<br>United States District Judge<br><br>**PLAINTIFFS [PROPOSED] SECOND AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |
| Plaintiffs, | |
| vs. | |
| SCRAM OF CALIFORNIA, INC., a California Corporation; ALCOHOL MONITORING SYSTEMS, INC., a Delaware Corporation; and DOES 1 through 10, inclusive. | |
| Defendants. | |

## CLASS ACTION COMPLAINT

Plaintiffs Roseanne Hansen, Jennifer Oh, Linda Soltis, Brooke Hoffman, Patrick Guerrero, Micah Bailey, Christina Bohnstedt, (hereafter collectively "Class Plaintiffs") do bring this class action complaint against the Defendant, Scram of California, Inc. ("SCRAM") and their co-Defendant and manufacturer, Defendant, Alcohol Monitoring Systems, Inc. ("AMS") (collectively "Defendants") on their own behalf, and on behalf of classes of individuals who have, or in the past purchased Defendants' transdermal alcohol monitoring services, to seek redress from Defendants for their failure to disclose a known defect with their transdermal monitoring device which causes false-positive readings as a result of multiple environmental contaminants unrelated to the said wearer's consumption of any alcohol. The Defendants are aware of, and still aware of this defect in their own transdermal monitoring device, yet have done nothing to inform their customers of this potential defect prior to providing them the devices and charging them for the service. On behalf of themselves, others similarly situated and the proposed classes of the Defendants' customers, Plaintiffs seek damages, restitution and injunctive relief against Defendants for the false advertising of their transdermal monitoring service. For their class action complaint, Plaintiffs allege as follows upon personal knowledge as to themselves and their own acts and experiences, and as to all other matters, upon information and belief, including investigations conducted by their attorneys.

Plaintiffs, and the classes they seek to represent, bring this action against the Defendants to challenge the systematic defects in the products that are produced by SCRAM and AMS. At times, when a customer of SCRAM complains about the product causing injury by way of affixing the device to the customer, or about the high exuberant prices deployed by the Defendants, this Complainants end up with SCRAM filing with the Court false reading violation reports that would often reflect that the customer, like the Plaintiffs herein, consumed alcohol when in fact

they did not.  SCRAM employees have been known to have been directed by their superior officers, to file many of these false positive reports against the would-be Complainants.

One of the major purposes of sentencing is rehabilitation. Yet, when a person, like each of the Plaintiffs in California, is charged with a DUI - related case, the DUI Defendants will often be directed by the trial Court to wear a SCRAM ankle bracelet. To the extent that the person is ordered by the Court not to consume any form of alcohol, it substantially occurs more often than not, that a false reading is produced by the Defendant SCRAM and AMS. Some offenders in California, like the Plaintiffs herein, were required to wear the SCRAM and AMS device until their criminal case is adjudicated. Coincidentally, when an offender is set to discharge from the SCRAM program, most Defendants, their attorneys, and the Court will receive a violation report just days before discharge. In a money-making scheme, the Defendants SCRAM and AMS work together to generate false reports. At the end of the day, the Defendants, which starts with AMS, then goes to SCRAM, generate a report, reflecting that the wearer consumed alcohol when in fact they had not.

Plaintiffs are informed, believe and thereon allege that as a result of this money-making scheme that is created by the Defendants SCRAM and AMS, that each year in every County of the State of California, thousands of clients of SCRAM are sent back to jail, prison and even having their bonds revoked as a result of this money-making scheme. Regardless of whether the client is returned to custody as a result of the false violation reports, the clients of SCRAM can suffer other deprivations and consequences, as a result of the Defendants' false reports. In some cases, like Ms. Hansen's, Defendant SCRAM produced a false report and the trial Court imposed an additional year of SCRAM supervision even though it was proven that Ms. Hansen had not consumed any alcohol, contrary to SCRAM and AMS' filed violation report with the Court. Like Ms. Hansen,

1    thousands of other clients suffer the same catastrophic losses.

2            The SCRAM Device has become an increasingly popular alcohol testing

3    device in the criminal justice and addiction treatment industries throughout the

4    United States. Defendants marketed and sold, and continue to market and sell, their

5    SCRAM Devices to various drug and alcohol monitoring companies in these

6    industries. The monitoring companies will then provide monitoring services to

7    consumers, oftentimes renting out the SCRAM Devices and acting as a third-party

8    supervisor of users' test results.  In marketing and selling their SCRAM Devices to

9    other monitoring companies and consumers, Defendants portrayed, and continue to

10   portray, their SCRAM Devices as being admissible and certified by the courts.

11   In spite of these representations, the SCRAM Device frequently returns error

12   messages, false positives, false tampers, and even false 'removals', from the

13   customer's leg, and Defendants SCRAM and AMS actively conceal these

14   malfunctions from the public.

15           All SCRAM and AMS consumers, customers, and clients rent Defendants'

16   SCRAM Devices in reliance and based on the Defendants misrepresentations and

17   omissions that the SCRAM Devices are certified alcohol screening devices, are

18   reliable, cost effective, can articulate whether or not the customer consumed any

19   alcohol as opposed to using any environmental products that contain alcohol

20   ingredients and that the SCRAM Device will allow them to establish their sobriety

21   at any time. Plaintiffs have been injured due to Defendants deception in marketing

22   their SCRAM monitoring device.

23           As a result of Defendants conduct, Plaintiffs, and all others similarly situated

24   have suffered financial damages resulting from their purchase or rental of the

25   Defendants' SCRAM Device, and the Defendants have been unjustly enriched by

26   retaining the "set-up" fees of $ 325.00 and the bi-weekly fees of $ 225.00 that is

27   thoroughly collected by the Defendants. If a customer does not remit payment to

28   the Defendants due to loss of employment, or any typical reason for not having the

PLAINTIFFS' [PROPOSED] SECOND AMENDED CLASS ACTION COMPLAINT FOR DAMAGES

1    SCRAM fees, the Defendants then file violation reports with the Court indicating

2    that the customer is in violation of their SCRAM conditions.

3           Plaintiffs, on behalf of themselves and on behalf of a Class of similarly

4    situated individuals, bring this lawsuit seeking injunctive relief, actual damages,

5    and restitution, together with costs and reasonable attorneys' fees.

6                            **VENUE AND JURISDICTION**

7           1.     This Court has jurisdiction over the state law claims asserted here that

8    is pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A), because at

9    least one member of a class of Plaintiffs is a citizen of a State different from any

10   Defendants, (b) the amount in controversy exceeds $5,000,000, exclusive of

11   interest and costs, and (c) none of the exceptions under that subsection apply to this

12   action. Jurisdiction over Defendants is proper because they conduct business

13   within this District. Additionally, Scram of California, Inc., has a principal place of

14   business that is located in this District. Further, the Defendant Alcohol Monitoring

15   Systems, Inc., has a registered agent within this District and both Defendants

16   collect financial monies within this District. Therefore, Defendants SCRAM and

17   AMS have the minimum contacts necessary to fall under the jurisdiction of this

18   Court.

19          2.     This Court has personal jurisdiction over Defendants because they

20   conduct operations and/or sales in California, are registered to do business in

21   California, and the acts alleged herein originated in this District.

22          3.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because

23   a substantial part of the events giving rise to the claim occurred in this District.

24

25                                  **THE PARTIES**

26          4.     Plaintiff Roseanne Hansen is a natural person, over the age of 18

27   years old, and a citizen of the State of California.

28          5.     Plaintiff Jennifer Oh is a natural person, over the age of 18 years old,

PLAINTIFFS' [PROPOSED] SECOND AMENDED CLASS ACTION COMPLAINT FOR DAMAGES

1  and a citizen of the State of California.

2         6.     Plaintiff Linda Soltis is a natural person, over the age of 18 years old,

3  and a citizen of the State of Ohio.

4         7.     Plaintiff Brooke Hoffman is a natural person, over the age of 18 years

5  old, and a citizen of the State of South Dakota.

6         8.     Plaintiff Patrick Guerrero is a natural person, over the age of 18 years

7  old, and a citizen of the State of Texas.

8         9.     Plaintiff Micah Bailey is a natural person, over the age of 18 years

9  old, and a citizen of the State of Louisiana.

10        10.    Plaintiff Christina Bohnstedt is a natural person, over the age of 18

11 years old, and a citizen of the State of Minnesota.

12        11.    Defendant, Scram of California, Inc. is a California corporation with

13 its national headquarters located in Los Angeles, California. Defendant is a local

14 distributor and provider of AMS's devices and services in this District, and

15 elsewhere throughout California. Defendant SCRAM maintains its principal place

16 of business in California. In addition, SCRAM does transact business in California,

17 maintains a website in California, has numerous contracts with State agencies and

18 their principal place of business is located at 402 West Broadway, # 1250, San

19 Diego, California 92101.

20        12.    Defendant, Alcohol Monitoring Systems, Inc., ("AMS") is a Delaware

21 corporation with its national headquarters located in Littleton Colorado. Defendant

22 AMS is a nationwide provider of alcohol monitoring devices and services to state

23 and federal law enforcement agencies, courts, as well as any and other private

24 entities such as rehabilitation centers. Defendant AMS is registered in California

25 and provides alcohol monitoring services in California, including in this District,

26 and elsewhere throughout the United States. Additionally, AMS is a corporation

27 existing under the laws of the State of Delaware. AMS has a principal place of

28 business located at 1241 W. Mineral Avenue, # 200, Littleton, Colorado, 80120.

PLAINTIFFS' [PROPOSED] SECOND AMENDED CLASS ACTION COMPLAINT FOR DAMAGES

13.     Plaintiffs are currently ignorant of the true name(s) and the capacities, whether individual, corporate, associate, or otherwise, of the Defendants sued herein under the fictious names DOES 1 through 10, inclusive, and therefore, sues such civil Defendants by such fictitious names. Plaintiff's will seek leave to amend this Complaint to allege the true names and capacities of said fictitiously named Doe Defendants is legally responsible in some manner for the events and is also sued pursuant to California Code of Civil Procedure Section 474.

14.     Plaintiffs are informed and believes and thereon alleges that the Defendants, including the fictitious Doe Defendants, were at all times acting as actual agents, conspirators, ostensible agents, partners and/or joint ventures and their employees of all other Defendants, and that all acts alleged herein occurred within the course and scope of said agency, employment, partnership, and joint venture, conspiracy, or enterprise, and with the express and/or implied permission, with all such knowledge, consent, authorization and ratification of their own co-Defendants however, each of these allegations are deemed "alternative" theories whenever not doing so would result in a contraction with the other allegations.

15.     Whenever the Complaint refers to any act of the Defendants, the allegations shall be deemed to mean the act of those Defendants named in the particular cause of action, and each of them, acting individually, jointly and severally.

## COMMON ALLEGATIONS OF FACT

16.     Defendants are providers of alcohol monitoring services and devices to state and federal law enforcement agencies, courts, as well as various private entities.

17.     The alcohol monitoring device used by Defendants is called the SCRAM Continuous Alcohol Monitoring system (the "SCRAM Device").

18.     The SCRAM Device is approximately the size of a deck of cards and is placed on the wearer's ankle using a strap. The Scram Device is a transdermal

1   monitoring device that was designed to detect and record any instances when the

2   wearer had consumed alcohol by detecting alcohol vapors caused by ingested

3   alcohol diffusing through the skin.

4      19.   The majority of Defendants' business consists of providing alcohol

5   monitoring services to individuals as part of court mandated rehabilitation

6   programs, as a condition of probation or bond, or other purposes related to the

7   criminal justice system.

8      20.   While Defendants are selected by state and federal agencies and

9   courts to provide monitoring services for criminal defendants and other individuals

10  who become involved in the criminal justice system, it is such individuals who are

11  ultimately Defendants' customers and choose to purchase Defendants' alcohol

12  monitoring service as an alternative form of monitoring offered by the state or

13  federal agency or court. Defendants enter into private contracts with each such

14  individual to provide them their alcohol monitoring services, and directly charge

15  them a monthly fee.

16     21.   Defendants advertise their SCRAM Device as a cost-effective and

17  accurate alternative for law enforcement agencies and courts to track the alcohol

18  usage of at-risk individuals such as those charged with driving under the influence

19  or other crimes relating to consumption of alcohol.

20     22.   Specifically, the SCRAM Device is meant to be worn 24/7. The

21  wearer is instructed to once a day, connect the SCRAM Device to a special

22  docking station connected to the internet to upload the monitoring data collected

23  by the device throughout the day. Once the device is connected, the data is sent to

24  a central data center in Colorado operated by AMS. There, the data is reviewed to

25  determine if any monitoring "event" occurred that indicates that the wearer

26  ingested alcohol.

27     23.   Unlike blood alcohol monitoring that directly detects the level of

28  alcohol present in the blood stream, Defendants' SCRAM Device relies on

PLAINTIFFS' [PROPOSED] SECOND AMENDED CLASS ACTION COMPLAINT FOR DAMAGES

transdermal alcohol monitoring, which operates by detecting the amount of alcohol that evaporates through the skin. Because the rate at which alcohol evaporates through the skin is significantly different than the rate at which alcohol is metabolized and detected in the blood stream, transdermal alcohol monitoring requires the use of an algorithm to approximate the blood alcohol content of the wearer based on the amount of alcohol vapor detected at the skin surface.

24      Because transdermal alcohol monitoring measures the amount of alcohol evaporating through the wearers' skin, the SCRAM Device is by its design susceptible to detecting "false-positive" alcohol readings as a result of what Defendants term to be "environmental alcohol." That is, alcohol vapors that wearer's encounter on an everyday basis that may come in contact with the SCRAM Device.

25.      Environmental alcohols take many forms, and many everyday products contain alcohol that evaporates upon exposure to air and can trigger a SCRAM Device to detect alcohol vapors. For example, body spray, cologne, aftershave, hand sanitizer; household cleaners such as Windex, gasoline, and many other products that most individuals come across on a day-to-day basis contain alcohol that evaporates into the atmosphere.

26.      Given the placement of the SCRAM Device against the wearer's skin on their or her ankle, and the fact that the SCRAM Device is designed to detect the presence of alcohol in the air surrounding the wearer, any environmental alcohol present near or around the device will lead to the device detecting the presence of alcohol vapors even if the wearer had not ingested any alcohol themselves.

27.      Defendants advertise to the public and the governmental agencies with whom they seek to work with, that the SCRAM Device is capable of determining the difference between alcohol vapors that are detected as a result of "ingested alcohol" and alcohol vapors that are detected as a result of "environmental alcohol."

28.     Further, the individuals who ultimately purchase Defendants' alcohol monitoring services, are not in any way informed that the SCRAM Device could even register any false-positive test results due to environmental alcohol before making the decision to purchase Defendants' alcohol monitoring service and submit to monitoring via the SCRAM Device.

29.     However, Defendants misrepresent the risk of false-positive test results as a result of environmental alcohol. In fact, numerous sources have documented instances of false-positive test results recorded by the SCRAM Device when the wearer was proven to have not consumed any alcohol.

30.     For example, in one instance a criminal defendant in Oakland County Michigan was fitted with the SCRAM Device as a condition of being released on bond following a car accident. Subsequently, the court was notified of three drinking episodes that were potential violations of the conditions of the bond, and a bond revocation hearing was held. However, at the hearing, the Honorable Dennis Powers of the Novi District Court determined that the SCRAM Device was in fact unreliable and that the events detected were false-positives. Specifically, according to the data recorded by the SCRAM Device, during the first drinking episode the wearer consumed alcohol for 63 consecutive hours and maintained an identical blood-alcohol level at all times—a biological impossibility. The second drinking episode was detected by the SCRAM Device at the exact same time as when the wearer was taking a breath-alcohol test that showed no presence of alcohol whatsoever. The third drinking episode was detected when the wearer was in the hospital, and even though the wearer had not consumed any alcohol whatsoever, the data recorded was identical to data corresponding to some who had internally ingested alcohol. The court rejected the evidence presented by AMS and in particular noted that "the SCRAM tether did not meet the requisite standards of 'reliability' or 'general acceptance' in the relevant scientific community" and that "[t]he body of evidence supplied by the defendant made it clear that the readings

1  by the SCRAM tether were not necessarily the result of prolonged drinking
2  episodes."

3       31.    As another example, another criminal defendant was ordered by the
4  Court in Ramsey County Minnesota to wear the SCRAM ankle bracelet as a result
5  of a DUI related offense. The SCRAM device is worn as an ankle bracelet which
6  monitors the migration of alcohol through the offender's skin. The measurements
7  are then obtained are converted to a blood-alcohol content which is designated as
8  the TAC, which means Transdermal Alcohol Content.

9       32.    In this case, on November 9, 2006, the defendants SCRAM device
10 showed a positive reading for alcohol with a confirmed peak reading .035 TAC.
11 On November 10, 2006, at approximately 6:00 a.m., the defendants SCRAM
12 device showed a positive reading for alcohol with an alleged confirmed peak
13 reading in at .05 TAC. The defendant was notified a week later that he tested
14 positive for alcohol consumption and that a probation violation report would be
15 filed against him. The defendant was notified by their attorney and the defendant
16 got an alcohol test done through a certified medical lab and the results were
17 negative.

18      33.    In the very case, just as the same facts as each of the Plaintiff's, the
19 Honorable Edward S. Wilson found SCRAM highly unreliable and based on the
20 hearing that was held, the trial Court found that SCRAM was not widely accepted
21 in the scientific community. Further, Judge Edward Wilson also determined that
22 the SCRAM device that the defendant was wearing was not in proper working
23 order on the dates in question. As such, the violation was dismissed.

24      34.    In a study of the accuracy of transdermal alcohol monitoring utilizing
25 the SCRAM Device, it was similarly noted that the "methodology used by AMS
26 cannot separate ethanol from other contaminating alcohols and therefore is not a
27 reliable method." This is of particular significance because ingested alcohol is
28 specifically comprised of ethanol. Thus, any device intended to measure an

individual's blood alcohol content that is not specific to ethanol will detect all types of alcohols, including those that are not ingested by an individual. The SCRAM Device utilizes "fuel cell" technology that creates an electric current when an electrolyte contained within the device comes in contact with chemicals that has a "hydroxyl" group. The chemicals include isopropyl alcohol (rubbing alcohol), antifreeze, and many other "alcohols" such as those previously described above. Because the SCRAM device is not specific to detecting ethanol, any number of other alcohols that are not ingested by the wearer can result in the Device registering an "alcohol" reading if they come in contact with the device.

35.   Because the SCRAM Device does not directly measure the wearers' blood alcohol content, and is not specific to detecting ethanol, a reading by the SCRAM Device detecting the presence of alcohol vapors is not by itself in any way indicative that the wearer had actually consumed alcohol.

36.   As discussed above, Defendants have to apply an algorithm to determine whether any readings collected by the SCRAM Device actually correspond to what Defendants term a "confirmed alcohol consumption event."

37.   Specifically, Defendants measure the rate at which the alcohol vapor readings detected by the SCRAM Device increase and decrease in order in order to determine whether they match the predicted rate at which alcohol vapors are released as a result of alcohol being metabolized by the human body. In applying their algorithm to determine whether an "alcohol consumption event" occurred, Defendants rely on a general assumption that the rate at which alcohol vapor is released through the skin following the consumption of alcohol falls within a certain range for all individuals, regardless of any distinguishing physiological characteristics (i.e. weight, height, thickness of skin).

38.   Applying this algorithm, Defendants claim to be able to distinguish between alcohol vapor readings caused by "alcohol consumption events" and readings caused by "environmental alcohols," because alcohol vapor readings that

1    are caused by environmental alcohols are supposed to have a significantly different

2    rate at which they increase/decrease in comparison to readings that are caused by

3    ingestion of alcohol.

4        39.    Because the raw data produced by the SCRAM Device is by itself of

5    limited use in determining whether the wearer actually consumed alcohol, the data

6    has to be sent to AMS' central monitoring facility in Colorado to be analyzed and

7    for AMS' personnel to apply the algorithm and attempt to determine whether an

8    "alcohol consumption event" had occurred.

9        40.    When a customer of Defendants' alcohol monitoring service connects

10   their SCRAM Bracelet into the internet connected docking station each day, the

11   data collected for that day is sent to AMS for such analysis.

12       41.    If upon analyzing the data AMS determines that the alcohol vapor

13   readings were caused by an "alcohol consumption event," Defendants inform the

14   law enforcement agency or court exercising jurisdiction over the wearer that based

15   on their analysis of the collected data the individual had consumed alcohol.

16       42.    However, the individual who was actually wearing the SCRAM

17   Device, is not in any way informed by Defendants or by the device itself that an

18   "alcohol consumption event" had occurred, neither at the time when the SCRAM

19   Device is actually recording the alcohol vapor readings, nor when AMS concludes

20   its analysis of the data and informs the law enforcement agency or the court.

21       43.    In fact, the SCRAM Device is not designed to, and does not actively

22   inform the wearer in real-time when it is detecting alcohol vapors. Even if the

23   SCRAM Device records alcohol vapor readings continuously for 24 hours, when

24   the wearer connects the SCRAM Device to the docking station to upload the data,

25   the SCRAM Device will simply flash a green light to inform the wearer that the

26   upload was successful.

27       44.    Because the vast majority of Defendants' customers purchase the

28   transdermal alcohol monitoring service as part of a condition of their bond or

probation, a report to a law enforcement agency or judiciary that an individual has been determined to have consumed alcohol will often be considered a violation of the conditions of any such bond or probation and trigger a hearing revoking the bond/probation.

45.     However, because Defendants' customers are not timely notified when the SCRAM Device detects the presence of alcohol vapors, when the data is uploaded daily to AMS, or even when AMS sends a report stating that an "alcohol consumption event" has occurred, they often do not discovery that they had supposedly violated the conditions of their bond or probation until several days after the "alcohol consumption event" had occurred.

46.     Thus, Defendants' customers who wish to dispute any finding that they violated the terms of their bond/probation are unable to obtain evidence that could allow them to challenge the revocation of their bond/probation because by the time they are made aware of the potential violation, due to the rate of alcohol metabolism in the human body, Defendants' customers cannot obtain a timely blood or breath alcohol test that could definitively show that they did not consume alcohol at the time indicated by the SCRAM Device.

**SCRAM and AMS Device**

47.     Alcohol Monitoring Systems, Inc., was found in 1997 and began manufacturing, marketing, and selling SCRAM Devices. According to its website, AMS and SCRAM has a presence in all 50 states and Canada.

48.     Currently, SCRAM and AMS produces several different models of the SCRAM Device, as well as other products such as the traditional home GPS ankle monitor as well as a drug patch that an offender can wear similar to the SCRAM ankle monitor. The devices by SCRAM and AMS are portable and employ the same fuel cell technology to determine the amount of alcohol in a user's sweat level. Both SCRAM and AMS also lease and sells their devices to third party companies all over the world.

PLAINTIFFS' [PROPOSED] SECOND AMENDED CLASS ACTION COMPLAINT FOR DAMAGES

### *Scram and AMS's False Claims of Reliability*

49.     In SCRAM and AMS's marketing materials, and on both of their websites, to government agencies such as the Courts, and law enforcement agencies, and their customers, SCRAM and AMS advertises their products as being reliable and can make a factual determination whether or not if the SCRAM customer has consumed alcohol, or applied environmental products such as lotion, or hand sanitizer that contains alcohol ingredients.

50.     However, this is entirely false and misleading and SCRAM and AMS made these statements despite the fact that statements are not true. The SCRAM Device itself is not specific enough to test for ethanol which is an alcohol ingredient. The term "alcohol" has been synonymous with "spirituous" liquids for the past 300 years. There are four types of alcohol: methyl alcohol, ethyl alcohol, propyl alcohol and butyl alcohol. Ethyl Alcohol, or ethanol ($C_2H_5OH$), is the type used in the production of alcoholic beverages. The other three types, methyl, propyl and butyl alcohol, if consumed can result in blindness and death, even in relatively small doses. Alcohol, or ethanol, is the intoxicating agent found in beer, wine and liquor. The SCRAM Device again is not as reliable as the Defendants advertised.

51.     Contrary to SCRAM and AMS's marketing representations, the SCRAM Devices does not have any of the claimed certifications and validations. Thereby, the SCRAM Device is more prone to creating false positive consumption and tamper reports.

52.     More specifically, the SCRAM Devices have been deemed unreliable as evidence of intoxication, particularly because the SCRAM Devices results have not been supported by scientific evidence or testimony. However, the Defendants make misrepresentations to their customers as well as government agencies that the SCRAM Device has in fact been accepted into the scientific community when it fact it has not been. The Defendants made these statements to their customers and

1    government agencies knowing the falsity of these statements anyways in an effort

2    to bolster their money-making scheme.

3           53.     Both SCRAM and AMS, continues to fail, to inform their consumers,

4    including Plaintiffs and the Class members, that its SCRAM Devices are (a) the

5    SCRAM device has never been accepted into the scientific community, (b) the

6    SCRAM Device inadmissible in court as evidence of intoxication, and deemed

7    unreliable by courts, (c) the SCRAM Device is capable of producing false readings

8    due to the fact the SCRAM Device is not specific enough to test for the ingredients

9    of ethanol, and (d) when the SCRAM customers uploads their readings through the

10   internet, a bad internet connection can cause a false positive.

11          54.     Despite these representations, the SCRAM Devices do not function as

12   the Defendants describes, as they constantly display error messages, fail to record

13   and transmit data to the internet, and return false positive test results. The SCRAM

14   Devices fail to reliably perform their intended purpose because users frequently

15   and repeatedly receive error messages on their SCRAM Device informing them

16   that their test has not been sent and instructing them to try again. Instead of quickly

17   and conveniently submitting a valid test, users are forced to continue attempting to

18   submit a successful test in order to remain compliant in their monitoring program.

19          55.     Despite SCRAM and AMS assurances, the SCRAM Devices do not

20   reliably upload data to the internet. A missed test may result in serious

21   consequences, including revocation of their probation and jail time. According to

22   SCRAM, "If a client either has a positive test or a missed test, both should be

23   viewed as a positive test and treated equally."

24          56.     Both SCRAM and AMS failed, and continues to fail, to inform

25   consumers, including Plaintiffs and the Class members, that its SCRAM Devices

26   do not allow users to establish their sobriety at any time because the SCRAM

27   Devices (a) frequently and repeatedly display error messages, (b) require users to

28   make repeated attempts to submit a successful test, (c) frequently fail to transmit

1    test results to the internet, (d) erroneously report that users missed scheduled tests,

2    and (e) erroneously generate false positive test results.

3        57.    Consumers, including the Plaintiffs and Class members, previously

4    and currently purchased or rented SCRAM Devices because they believed the

5    SCRAM Devices were verified and certified alcohol screening devices, and that

6    SCRAM Devices allowed users to establish their sobriety at any time. Consumers,

7    including the Plaintiffs and the Class members, believe the SCRAM Devices have

8    these qualifications and characteristics in reliance and based on SCRAM and

9    AMS's misrepresentations and omissions described herein.

10       58.    Plaintiffs and the Class members relied on SCRAM and AMS's

11    foregoing misrepresentations and omissions in deciding to purchase or rent the said

12    SCRAM Devices. Had Plaintiffs and the Class members known the truth about

13    SCRAM and AMS's aforementioned misleading representations, they would not

14    have purchased or rented the SCRAM Devices, as there were and are alternative

15    alcohol testing technologies available to them that they could and would have

16    chosen.

17       59.    Throughout the course of the monitoring programs, Plaintiffs'

18    SCRAM Devices repeatedly displayed error codes, failed to upload test results,

19    erroneously reported missed tests, and returned false positive and tamper test

20    results.

21       60.    As a result of SCRAM and AMS's misrepresentations and omissions,

22    as well as the SCRAM Devices' functionality issues, Plaintiffs and other Class

23    members have incurred financial damages resulting from the purchase or rental of

24    SCRAM Devices.

25       61.    Plaintiffs and the Class members have been injured due to SCRAM

26    and AMS's deception in marketing its SCRAM Devices, and as a result of

27    SCRAM and AMS's despicable conduct, Plaintiffs and the Class members have

28    suffered financial damages resulting from the purchase or rental of the Defendants

SCRAM Devices. In light of the foregoing, Plaintiffs, on behalf of themselves and on behalf of Classes of similarly situated individuals, bring this lawsuit seeking injunctive relief (in the form of changing their marketing and advertising materials), said actual damages, and restitution, as well as costs and reasonable attorneys' fees.

### FACTS RELEVANT TO PLAINTIFFS

### *1.   Roseanne Hansen*

62.   Plaintiff Roseanne Hansen, ("Ms. Hansen or Plaintiff's"), was driving in the City of San Diego when a San Diego Police Department, ("SDPD") officer saw Ms. Hansen in her vehicle and also witnessed Ms. Hansen fail to yield at a known red stop sign. As such, the SDPD officer began following Ms. Hansen for several blocks. The SDPD officer alleges that he witnessed Ms. Hansen commit another traffic offense of failure to yield at a four way stop light.

64.   The SDPD officer then initiated a traffic stop of Ms. Hansen and stopped her in her drive way at her home. The SDPD police officer began asking her several questions. The SDPD officer then became suspicious that Ms. Hansen was under the influence of alcohol. The officer then conducted a Nystagmus check on Ms. Hansen's eyes using his finger. The officer then decided to conduct what is called Standard Field Sobriety Tests, ("SFST's").  The officer alleges that Plaintiff Hansen failed these tests. The officer then had Ms. Hansen do a One-Leg Stand Test by lifting her left foot off the ground. The officer then had Ms. Hansen start counting from 1 to 20.

65.   Thereafter, based on the officer's training, placed Ms. Hansen under arrest for suspicion of driving under the influence. Ms. Hansen was then taken to the station where she was given an option to submit to a breath or blood test. She agreed to a breathalyzer. Due to the facts that the breathalyzer machine was not working at its best, the officer then asked Ms. Hansen for a blood test based on the breathalyzer machine not working correctly. Ms. Hansen then consented to a blood

test. After the samples were secured, Ms. Hansen was then transported to the Las Colinas County Jail. Ms. Hansen later posted bail and was released.

66.     Soon after Ms. Hansen was released from the San Diego County Jail, Ms. Hansen was provided with a Court date and Ms. Hansen was then charged with misdemeanor DUI and her and her private retained attorney appeared in San Diego Superior Court and defended against the DUI. As such, Ms. Hansen, by and through her attorney, was later arraigned for misdemeanor DUI. During the course of the criminal case, it was Ms. Hansen voluntarily entered herself in an alcohol treatment center.

67.     After Ms. Hansen entered herself into the treatment facility, on a daily basis, Ms. Hanses was monitored on a daily basis and checked for alcohol. At no time was SCRAM or AMS ever made aware that she was entered into a private rehabilitation center. While Ms. Hansen was entered into the treatment facility, her freedom was strictly regimented. Ms. Hansen was not permitted to leave from the facility, go to work, or consume any form of alcohol.

68.     On February 8, 2016, while living in an alcohol rehab center, AMS had sent a report that to their co-Defendant SCRAM indicating a positive reading that Ms. Hansen consumed alcohol for a day long period. Thereafter, SCRAM, who had ample opportunity to read, investigate and understand the report, then just decided in the best interest of AMS and SCRAM, that the two Defendants would then generate a report that Ms. Hansen consumed alcohol. Again, at no time did SCRAM and AMS know that Ms. Hansen was residing in an alcohol rehab center.

69.     On February 7, 2016, the day before the alleged drinking episode that was paraded around by the Defendants, was a fact that the director of the rehab center where Ms. Hanses was living had given Ms. Hansen a breathalyzer as a part of a random inspection that Ms. Hansen agreed to. The results of the breathalyzer where in fact negative.

70.     After SCRAM and AMS crafted a false violation report pertaining to Ms. Hansen, it was then SCRAM forwarded a copy of the false report to the Court and to Ms. Hansen private attorney. Once the report was filed with the Court and her attorney, Ms. Hansen was then contacted by her attorney and informed of the false report. Ms. Hansen was then eager to prove her innocence. Ms. Hansen then reported the SCRAM report to her rehab treatment center manager, who again then tested Ms. Hansen on the spot. The results were negative.

71.     That same day, Ms. Hansen's attorney then instructed her to go to a licensed and State approved medical lab to have a urine sample tested. At the lab, Ms. Hansen provided the lab with a urine sample that was ultimately tested not only for alcohol, but also drugs. The results of urine sample were staggering. The results were negative and the State certified lab then sent a copy of their medical report to Ms. Hansen.

72.     Defendants AMS and SCRAM falsely represented to the Court, Judge Lisa Rodriguez, Ms. Hansen's attorney, and Ms. Hansen that she had consumed alcohol for hours at a time. In the end, Ms. Hansen scientifically proved that she did not consume any alcohol and the corrupt Defendants AMS and SCRAM had stated in the false report.

73.     Once Ms. Hansen appeared in Court to defend against the false report, it was then the trial Court did not allow Ms. Hansen to introduce the urine test results. As a result, the Court just decided after reviewing the AMS and SCRAM report that was generated, that Judge Lisa Rodriguez would just extend the period of Ms. Hansen's SCRAM monitoring to an additional year. As a result, this means more money making for Defendants AMS and SCRAM.

74.     As a part of the Defendants money making scheme, it is structured so that when a violation report is generated, the person who is wearing the SCRAM ankle bracelet, will eventually have to appear in Court. When that time comes, both of the Defendants AMS and SCRAM know that most clients do not have the

money to prove their innocence by paying $ 300.00 for a urine test, or $ 800.00 dollars for a hair follicle test. Therefore, Defendants AMS and SCRAM do know that ninety nine percent of the judges will then extend the SCRAM period of the criminal defendant by a year, so that means the criminal defendant must not only be monitored by SCRAM for another year, but it also means that the person who is wearing the SCRAM device now gets to pay AMS and SCRAM another $ 250.00 for SCRAM services every two weeks, and another setup fee in the amount of $ 325.00. Just an everyday money making scheme that the Defendants incorporate by duping every single Judge of the Superior Court of California into actually believing that the criminal defendant actually consumed alcohol when in fact the person has not.

75.     Ms. Hansen paid a total of $ 6,400.00 to Scram of California for the Defendants alcohol monitoring service.

76.     Ms. Hansen paid a total of $ 300.00 for a certified urine test from a certified laboratory.

77.     Additionally, Ms. Hansen also paid $ 2,000 for attorney fees to her attorney to defend against the alleged SCRAM violation.

78.     Had Ms. Hansen known that the SCRAM Device registered false positive test results, did not timely inform the user when the device was detecting the presence of alcohol vapors, and that Defendants AMS and SCRAM would not timely inform Plaintiff once they had determined that an alcohol monitoring event occurred, Plaintiff would have never agreed to purchase Defendants alcohol corrupt monitoring service as a condition of her bond, and would have petitioned the court for an alternative means of monitoring or filed a Writ of Mandate to the Fourth District Court of Appeals asking the Court of Appeals to remand and vacate the SCRAM condition.

## 2.    *Jennifer Oh*

79.    Plaintiff Jennifer Oh was arrested for driving under the influence on December 16, 2014. Ms. Oh was subsequently involved in a car accident with another car. A short time later, police arrived on scene and had opened a crash investigation. During that time, the police suspected that Ms. Oh was under the influence of alcohol. The investigating officer conducted field sobriety tests on Ms. Oh and alleged that Ms. Oh was in fact under the influence.

80.    Ms. Oh was read her Miranda rights and placed under arrest and then transported to the local police station where Ms. Oh posted bond. The police then provided Ms. Oh with a Court date to appear in Court.

81.    Several months later, Plaintiff retained private counsel and appeared at the trial Court to be arraigned on DUI related charges. At that time, Ms. Oh, by and through her attorney entered a not guilty plea. At the arraignment, her attorney made an offer of good faith to the Court to have Ms. Oh voluntarily enroll in the SCRAM ankle monitoring program.

82.    The criminal case was then postponed to give Plaintiff time to enroll in the SCRAM program. Several weeks later, Ms. Oh's attorney appeared before the trial Court and informed the Court that Ms. Oh enrolled in the SCRAM and AMS program.

83.    While Ms. Oh was enrolled in the SCRAM program, Ms. Oh was then ordered to pay SCRAM $ 225.00 a week for SCRAM monitoring. In addition, the Plaintiff also paid SCRAM a $ 325.00 enrollment fee.

84.    Once Ms. Oh was finally enrolled in the SCRAM program, Ms. Oh was then mandated to attend a seminar which was given by a SCRAM employee. The seminar consisted of the dos and don'ts while on SCRAM. The SCRAM employee instructed the Plaintiff not to consume alcohol. The employee also gave an instruction that Ms. Oh not use any form of alcohol related environmental

products. Ms. Oh agreed to both. At no time did SCRAM provide Ms. Oh with any notice of this writing.

85.    During the time that Ms. Oh was placed on SCRAM monitoring, Ms. Oh continued to complain about the monthly SCRAM fee. Ms. Oh also asked the SCRAM Defendant if the Plaintiff could apply to have her monthly costs reduced based on the facts that Ms. Oh could barely afford the monthly fee. However, the employee acting on behalf of SCRAM informed Ms. Oh that she could not seek a reduced rate and that if Ms. Oh, did not pay the monthly fees, that SCRAM would report Ms. Oh to the trial Court indicating that Ms. Oh was in violation of her SCRAM conditions.

86.    Facing the threats of arrest and detention and the possibility of losing her job, home and family, Ms. Oh choose to pay the huge fees to SCRAM and AMS. On June 8, 2015, weeks after Ms. Oh complained to her case manager about the outrageous fees assessed by SCRAM and AMS, Ms. Oh's attorney was sent a violation report that Ms. Oh was in violation of her SCRAM monitoring conditions. The alleged times of consumption was June 5, 2015 to June 7, 2015.

87.    Defendants AMS and SCRAM indicate that Alcohol detections have confirmed as consumption identify the Blood Alcohol Curve and include both the presence of absorption to the peak with an absorption rate less than 0.10% per hour and the presence of elimination with an elimination rate less than 0.025% per hour if the peak was less than 0.150% or less than 0.035% per hour if the peak is 0.150% or above. [Emphasis in original.

88.    Also attached to the report generated by AMS to SCRAM, is a graph sheet dated from the dates of June 5, 2015 at 6:00pm to June 7, 2015. The graph shows the trans-dermal concentration, ("TAC") levels just like in the graph of her co-Plaintiff. The TAC readings are the black line and are also represented on the scale sheet to the left of the graph sheet. It also reflects the Infrared, ("IR")

readings identified on the blue line and the temperature readings are displayed on the red line and represented by the scale on the right of the graph.

89.     The graph is subsequently listed from June 5, 2015 at 6:00pm to June 7, 2015.  During these two days, coincidentally, that TAC level stays the same as like her co-Plaintiff Jennifer Oh. Which by all accounts indicated that Ms. Oh drank for two days straight, a biological impossibility. During this time, AMS alleges that the TAC level stayed the same.

90.     As a result of a flawed report, Defendant SCRAM sent a report that was generated by AMS to Ms. Oh's private attorney. The report rambles on to indicate that Ms. Oh consumed alcohol on June 5, 2015 for two days.

91.     Defendant AMS produced the report and was reviewed by SCRAM, who in turn provided the alleged consumption report to third parties. The report was then sent to the trial Court. Once Ms. Oh became aware of the report and the alleged drinking episode, Ms. Oh's attorney then instructed Ms. Oh to go to a state certified laboratory. Ms. Oh voluntarily submitted to a medical lab, paid $ 300.00 to a private testing laboratory and provided a urine sample to have tested. Several weeks later the results of the urine test where made public. The results of the urine test were staggering. The results were negative for alcohol. Also in the sample that Ms. Oh voluntarily provided, the sample was tested for other forms such as the ingredients of alcohol and drugs. However, the certified medical lab was still able to reaffirm that the sample provided by Ms. Oh was still negative. Thereafter, Ms. Oh's private attorney turned over copies of the medical report by the certified lab and a hearing was held.

92.     Once the AMS, SCRAM, and lab reports were finalized, Ms. Oh by and through her attorney appeared in the trial Court and defended against the false report allegations. The trial Court was unable to come to a resolution in the case and therefore the SCRAM and AMS Defendants had no choice to face the facts that they produce a false report in a Court of law.

93.     Ms. Oh paid a total of $ 600.00 to Scram of California for their said corrupt Defendants alcohol monitoring service.

94.     Ms. Oh paid a total of $ 130.00 for a certified urine test from a state certified laboratory. Additionally, Ms. Oh also paid $ 1,000 for attorney fees to her private attorney to defend against the alleged SCRAM violation.

95.     Had Ms. Oh known or been aware that the SCRAM Device registered false positive test results, did not timely inform the user when the device was detecting the presence of alcohol vapors, and that Defendants AMS and SCRAM would not timely inform Ms. Oh once they had determined that an alleged alcohol monitoring event occurred, she would have never agreed to purchase Defendants alcohol corrupt monitoring service as a condition of her bond, or would have tried to locate another AMS and SCRAM monitoring company.

### 3.     *Linda Soltis*

96.     Plaintiff Linda Soltis was arrested for driving under the influence on April 2, 2017. Ms. Soltis was released that same night with a written promise to appear on her own behalf at a later date in Court. Ms. Soltis was cited for DUI as well as failure maintain lanes.

97.     On April 7, 2017, Ms. Soltis moved to retain private counsel and appeared in the trial Court and entered a formal not guilty plea by and through her retained counsel. In the State Court of Ohio, Ms. Soltis was required to abstain from using alcohol and as a condition of bond, Ms. Soltis was required to enroll and wear the SCRAM Device.

98.     At a later date, Ms. Soltis was required to report to the probation department where a probation officer attached the SCRAM Device. In addition, Ms. Soltis was provided approximately 10 pages of conditions of her bond and additional material related to wearing the SCRAM Device. Ms. Soltis was then required to initial each of the 10 pages and Ms. Soltis requested but was not provided copies of each of the forms. Among the forms was also documentation

1    indicating, among other things, a list of environmental products not to use.

2        99.    On April 17, 2017, Ms. Soltis was at her place of employment and

3    saw that she had two missed calls from the Ohio State Courts. Those phone calls

4    where in fact from the probation department and a probation officer informed Ms.

5    Soltis to come to the probation office and provide a urine sample. When Ms. Soltis

6    arrived at the probation office, Ms. Soltis was informed that probation received a

7    violation report stating that on April 13, 2017 and April 14, 2017 that Ms. Soltis

8    consumed alcohol for a period of 12 hours. Further Ms. Soltis was also informed

9    that not only was the report for consumption, but indicated that there was a tamper

10   reading, an impossibility.

11       100.   Ms. Soltis appeared in front of a Magistrate on April 17, 2017 and it

12   was there the District Magistrate Judge called into question the reliability of the

13   device and ordered the probation officer to remove and change the SCRAM

14   Device. The Magistrate Judge refused to rule on the alleged SCRAM violation and

15   referred the case to a District Judge.

16       101.   On May 22, 2017, a hearing was held in the Ohio State Court, and the

17   State called a AMS employee as a witness to testify as to the consumption report of

18   Ms. Soltis. After the testimony of the AMS employee, Ms. Soltis was called to the

19   witness stand and was asked questions about where and what she did on the dates

20   and times that AMS alleges that Ms. Soltis consumed alcohol. At no time did the

21   Judge or prosecutor cross examine Ms. Soltis.

22       102.   After testimony, the District Judge said she would rule of the SCRAM

23   violation. However due to the SCRAM and AMS practices of turning over any and

24   all SCRAM reports and exculpatory evidence weeks later, Ms. Soltis's attorney

25   was just provided with the SCRAM and AMS reports just 40 minutes prior to the

26   hearing. This was also confirmed by an Ohio probation officer during the hearing

27   concerning Ms. Soltis. The judge then asked Ms. Soltis's attorney if he wanted an

28   extension of time due to the reports being turned over at the last minute, and her

1   attorney accepted the extension. The Judge then set a June 8, 2017 as the next

2   hearing date.

3       103.   Shortly after the hearing, Ms. Soltis did some research and discovered

4   that there was other means to prove her innocence to the Courts showing that she

5   did not consume any form of alcohol on the dates and the probation, SCRAM and

6   AMS insists. Ms. Soltis discovered that she could visit a state certified medical lab

7   to have a hair follicle test done.

8       104.   On June 8, 2017, the Ohio District Judge did not rule guilty nor not-

9   guilty on the Alleged SCRAM Violation.  However, the Ohio District Judge did

10  still order Ms. Soltis to continue to wear the SCRAM and to have mandatory 3

11  times per week Random Alcohol / Drug Testing with additional costs.  Ms. Soltis

12  is being caused a loss in income due to available hours of testing.  And On June 8,

13  2017, Ms. Soltis visited a state certified lab and provided a hair sample that was

14  able to go back 60 days to the alleged consumption dates. On June 12, 2017, Ms.

15  Soltis received notice from the laboratory that the results of the hair test where in

16  fact negative.

17      105.   Ms. Soltis paid a total of $ 1,515.00 to SCRAM and AMS for their

18  said corrupt Defendants alcohol monitoring service.  Ms. Soltis continues to pay

19  SCRAM and AMS as she continues to be required to be enrolled and wear the

20  SCRAM Device.

21      106.   Ms. Soltis paid a total of $ 185.00 for a certified hair test from a state

22  certified laboratory. Additionally, Ms. Solits also paid $ 1,000 for her attorney fees

23  to her private attorney to defend against the alleged SCRAM violation.

24      107.   Had Ms. Soltis known or been aware that the SCRAM Device

25  registered false positive test results, did not timely inform the user when the device

26  was detecting the presence of alcohol vapors, and that Defendants AMS and

27  SCRAM would not timely inform Ms. Soltis once they had determined that an

28  alleged alcohol monitoring event occurred, she would have never agreed to the said

PLAINTIFFS' [PROPOSED] SECOND AMENDED CLASS ACTION COMPLAINT FOR DAMAGES

1   purchase Defendants alcohol corrupt monitoring service as a condition of her bond,

2   or would have tried to locate another AMS and SCRAM monitoring company.

3      **4.   *Brooke Hoffman***

4      108.   Plaintiff Brooke Hoffman on the night of August 25, 2016 was at her

5   home and involved in an argument with her husband. To avoid a domestic dispute

6   with her husband, Ms. Hoffman decided in her best interest that she would leave

7   her home for a few hours. Shortly after leaving her home, Ms. Hoffman did in fact

8   have a few drinks. Soon thereafter, as Ms. Hoffman was driving, a person called

9   police to notify them of a potential drunk driver. Minutes later, Ms. Hoffman was

10  pulled over by a police officer.

11     109.   The officer then conducted a Nystagmus check on Ms. Hoffman's

12  eyes using his finger. The officer then decided to conduct what is called Standard

13  Field Sobriety Tests, ("SFST's") on Ms. Hoffman. Based on the officers' training

14  and experience, the officer placed Ms. Hoffman under arrest for suspicion of DUI

15  after Ms. Hoffman failed the (SFST's").

16     110.   On August 26, 2016, that day, Ms. Hoffman was released from jail

17  and as a condition of her release, Ms. Hoffman was required to report to the

18  Sheriff's office and have a member of law enforcement install the SCRAM Device

19  on her leg. Ms. Hoffman was never provided with any literature, a brochure or a

20  list of things Ms. Hoffman should do and not do while on SCRAM.

21     111.   Additionally, Ms. Hoffman was then required to report twice a week

22  to the Sheriff's office to download her readings into a SCRAM and AMS database

23  that is then sent to SCRAM and AMS after the readings are uploaded. It was then

24  that a deputy sheriff informed her that sometimes the readings don't upload and

25  often are not sent to SCRAM and AMS until a week later and could ultimately

26  reflect as the SCRAM customer never reported that day to upload the readings and

27  could generate a report reflecting that Ms. Hoffman is in violation of her release

28  conditions.

112.   Ms. Hoffman then retained private counsel and appeared in the trial Court and entered a not guilty plea in the South Dakota Superior Court. During the course of the DUI proceedings, the Judge instructed Ms. Hoffman to abstain from using alcohol.

113.   Starting on April 5, 2017, at 8: 30 a.m., to April 6, 2017 till 2:06 p.m., it was alleged by SCRAM and AMS that Ms. Hoffman tampered with the SCRAM Device during this time period. It their report, SCRAM and AMS stated also that alcohol was also detected from during this time period. This is an impossibility due to the facts that both SCRAM and AMS advertise that when a customer attempts to defeat the technology by placing an object over or between the sensor (IR) system of the SCRAM Device, then the SCRAM Device is unable to reach out an absorb the sweat sample necessary to determine if the customer consumed alcohol. Based on the statements and omissions by the Defendants, it is clear that there is no way possible that the SCRAM Device can do both.

114.   Again on April 7, 2017, at 2:05 p.m., to April 8, 2017 till 9:56 a.m., it was alleged again by SCRAM and AMS that Ms. Hoffman tampered with the said SCRAM Device during this time period.  This time period was alleged to have also exceeded almost 19 hours that SCRAM and AMS alleges Ms. Hoffman tampered with the SCRAM Device. However, this is an impossibility due to the facts that both SCRAM and AMS advertise that when a customer attempts to defeat the technology by placing an object over or between the sensor (IR) system of the SCRAM Device for a long period of time, a report is generated and sent to the supervising agency that the SCRAM customer has or is attempting to defeat the technology of the SCRAM Device. And the agency conducting the supervision will then ask the SCRAM wearer to report immediately to that agency.

115.   At no time during this time period did SCRAM and AMS ever contact the Gregory County Sheriff's Office to inform them of the alleged tamper. Again, in the flawed report, SCRAM and AMS stated alcohol was detected at the same

time as the alleged tamper. Again, this is clearly an impossibility due to the facts that both SCRAM and AMS advertises that when a customer attempts to defeat the technology by placing an object over or between the sensor (IR) system of the SCRAM Device, then the SCRAM Device is unable to reach out an absorb the sweat sample necessary to determine if the customer consumed alcohol. Based on the statements and omissions by the Defendants, it is clear that there is no way possible that the SCRAM Device can do both.

116.   Again, on April 10, 2017 at 2:33 a.m., to April 11, 2017 until 12:27 a.m., SCRAM and AMS alleged that Ms. Hoffman tampered with the SCRAM Device and again that alcohol was detected this time period. Both SCRAM and AMS alleges this continued for several days. On the actual SCRAM and AMS reports, due to the facts that the SCRAM Device is not reliable, even the SCRAM and AMS reports contradicted themselves due to the reports reflecting both alleged tampers and alcohol detection on the same dates, but different time periods.

117.   On April 15, 2017, Ms. Hoffman received an email from her attorney indicating that Ms. Hoffman was in violation of her bond conditions and that she had allegedly tampered with the SCRAM Device and consumed alcohol. And again, due to SCRAM and AMS's dirty business practices of waiting days and weeks to turn over their reports to attorneys, Ms. Hoffman could not go right away to have a blood test taken to prove that Ms. Hoffman did not consume alcohol.

118.   Both SCRAM and AMS continue to negligently violate the rights of all of the customers.

119.   During the coming days, Ms. Hoffman by and through her attorney, continued to complain to the State Attorney General and the supervising agency as her attorney pointed out all of the inconsistences in the SCRAM Device.

120.   After weeks of complaining, Ms. Hoffman was called and ordered to appear at the Sheriff's office so that the Sheriff could remove the SCRAM Device.

In lieu of wearing the SCRAM Device, Ms. Hoffman was now required to come to the Sheriff's office twice a week to provide a breath sample to the Sheriff.

121.   On May 31, 2017, Ms. Hoffman drove over 175 miles to a State certified medical laboratory to have a hair follicle test done in an effort to prove her innocence that Ms. Hoffman did not consume alcohol. Even though SCRAM and AMS flat on their face contradict themselves in their report, which by the said Defendants own omissions that the SCRAM Device cannot be a tamper and also a consumption at the same, Ms. Hoffman still had the hair test done anyways. The results of the hair follicle test were in fact negative.

122.   Ms. Hoffman paid a total of $ 1,760.00 to SCRAM and AMS for their said corrupt alcohol monitoring service.

123.   Ms. Hoffman paid a total of $ 150.00 for a hair follicle test from a state certified laboratory. Additionally, Ms. Hoffman also paid $ 2,200.00 for her attorney fees to her private attorney to defend against the SCRAM violation.

124.   Had Ms. Hoffman known or been aware that the SCRAM Device registered false positive test results, did not timely inform the user when the device was detecting the presence of alcohol vapors, and that Defendants AMS and SCRAM would not timely inform Ms. Hoffman once they had determined that an alleged alcohol monitoring event occurred, she would have never agreed to the said purchase Defendants alcohol corrupt monitoring service as a condition of her bond, or would have tried to locate another AMS and SCRAM monitoring company.

### 5.   *Patrick Guerrero*

125.   Plaintiff Patrick Guerrero on the day of June 26, 2016 was observed by a member of law enforcement allegedly drinking and driving. As such, Mr. Guerrero was later charged by the police with DWI. On September 21, 2016, Mr. Guerrero retained private counsel and appeared in the trial Court. During the Court hearing, Mr. Guerrero was released on bond and as a condition of bond, Mr. Guerrero was ordered to wear the SCRAM Device and abstain from the use of

alcohol.

126.   On December 29, 2016, Mr. Guerrero was attending a family event when the SCRAM Device registered an alleged consumption event.

127.   Shortly thereafter, Mr. Guerrero was then ordered to report to the probation department. Mr. Guerrero was informed by a probation officer for the very first time that it was alleged that Mr. Guerrero drank alcohol. Further, the probation officer informed Mr. Guerrero that a report would be generated a sent to the trial Court.

128.   Less than a week later, a report was in fact sent to the Court and a Judge issued a bench warrant. In that time, Mr. Guerrero contacted his attorney and Mr. Guerrero was advised to go by his counsel to have a ETG hair follicle test done that would go back up to 90 days. Mr. Guerrero visited a state certified medical lab and the results were negative for all traces of alcohol.

129.   With the negative results in hand, and an expert on hand to testify as to the readings of the ETG test, Mr. Guerrero by a through his attorney appeared in the trial Court to quash the warrant. The trial Court considered and took the test results into consideration and recalled the bench warrant and the Judge referred to the SCRAM Device "very puzzling" and the Court denied the SCRAM violation and Mr. Guerrero was then released on his own recognizance.

130.    Mr. Guerrero paid a total of $ 1,400.00 to SCRAM and AMS for their said corrupt alcohol monitoring service.

131.   Mr. Guerrero paid a total of $ 275.00 for a certified urine test from a state certified laboratory. Additionally, Mr. Guerrero also paid $ 1,000.00 for his attorney fees to his private attorney to defend against the SCRAM violation.

132.   Had Mr. Guerrero known or been aware that the SCRAM Device registered false positive test results, did not timely inform the user when the device was detecting the presence of alcohol vapors, and that Defendants AMS and SCRAM would not timely inform Mr. Guerrero once they had determined that an

alleged alcohol monitoring event occurred, she would have never agreed to the said purchase Defendants alcohol corrupt monitoring service as a condition of her bond, or would have tried to locate another AMS and SCRAM monitoring company.

### 6.   *Micah Bailey*

133.   On December 30, 2016, Defendants SCRAM and AMS generated a report that Mr. Bailey was in violation of the conditions of his bond. Defendants allege that on December 30, 2016 beginning at 9:04 p.m., continuing through December 31, 2016 that Mr. Bailey consumed alcohol. Specifically, the report by SCRAM and AMS reflects that at 9:04 p.m., Mr. Bailey consumed an alcohol beverage and had a TAC reading of 0.012 which is equal to almost two and a half drinks. During the next four hours, the TAC level got higher and higher.

134.   At no time did Defendants SCRAM and AMS ever know that Mr. Bailey was also required to have an interlock device installed in his vehicle that would require Mr. Bailey to breathe into a tube and the interlock device would quickly determine if Mr. Bailey had consumed alcohol.

135.   In the report generated by the Defendants, the reports states that at 12:35 a.m., on December 31, 2016 that Mr. Bailey's TAC level was at 0.049 which is equal to four drinks and maintained a TAC level for the next 30 minutes.

136.   The report generated by the interlock device reflects something entirely different. Mr. Bailey who was leaving his job, got into his vehicle and blew a breath sample into the interlock at 1:49:42 a.m., and because Mr. Bailey had not consumed any alcohol, his vehicle promptly started at 1:49:49 a.m., which was about 7 seconds later giving the interlock device time to evaluate the breath sample. As such, Mr. Bailey's vehicle started and Mr. Bailey was able drive his vehicle to his home. At 2:02:10 a.m., Mr. Bailey arrived at his home and the interlock records show that his vehicle was stopped. The report from when Mr. Bailey started his vehicle at 1:49:49 a.m., shows no alcohol was consumed by him.

137.   On February 3, 2017, Mr. Bailey's attorney was notified that the Court in Louisiana received a SCRAM and AMS violation report almost two months later after the alleged consumption date that allegedly occurred on December 20, 2016.

138.   Several days later, Mr. Bailey conducted research and discovered that he could go to a State certified medical laboratory and have a hair follicle test done to show no consumption. Mr. Bailey had the hair follicle test done and the results were staggering. The results were negative thereby supporting the reports by the interlock records that the SCRAM and AMS report was false and corrupt.

139.   On March 23, 2017, Mr. Bailey was ordered to appear in State Court. During the hearing, Defendants introduced their traditional false report. After the trial Court considered the interlock report and the SCRAM report, the trial Court overruled the alleged SCRAM violation and extended Mr. Baileys SCRAM period to 7 more months costing Mr. Bailey more money.

140.   Mr. Bailey paid a total of $ 4,400.00 to SCRAM and AMS for their corrupt alcohol monitoring service.

141.   Mr. Bailey paid a total of $ 150.00 for a certified urine test from a state certified laboratory. Additionally, Mr. Bailey also paid $ 1,800.00 for his attorney fees to his private attorney to defend against the SCRAM violation.

142.   Had Mr. Bailey known or been aware that the SCRAM Device registered false positive test results, did not timely inform the user when the device was detecting the presence of alcohol vapors, and that the Defendants AMS and SCRAM would not timely inform Mr. Bailey once they had determined that an alleged alcohol monitoring event occurred, he would have never agreed to the said purchase Defendants alcohol corrupt monitoring service as a condition of his bond, or would have tried to locate another AMS and SCRAM monitoring company, or petitioned the Court of Appeals to have the condition vacated based on the facts that Mr. Bailey already had an interlock device installed for the same case.

### 5.    *Christina Bohnstedt*

143.   Plaintiff Christina Bohnstedt

144.   On January 10, 2016, Ms. Bohnstedt was driving in the State of Minnesota and was later pulled over by local law enforcement for suspicion of a DUI offense. After Ms. Bohnstedt was ordered to get out of her vehicle, a police officer instructed Ms. Bohnstedt to perform standard field tests to determine if she was under the influence of alcohol.

145.   After the field tests were performed on Ms. Bohnstedt, the officer determined that Ms. Bohnstedt was under the influence of alcohol and the officer placed Ms. Bohnstedt in custody for the alleged offense.

146.   Ms. Bohnstedt was then taken to a local police station where she was released. Ms. Bohnstedt and her counsel later appeared in the Superior Court of the State of Minnesota. Ms. Bohnstedt was then ordered by the Court to enroll in the SCRAM program and wear the SCRAM Device as a condition of her release.

147.   While out on release, Ms. Bohnstedt complied with all of the terms and conditions of her bond, as well as with her SCRAM conditions. At the time, Ms. Bohnstedt was employed full time.

148.   Once Ms. Bohnstedt was released from jail entirely, Ms. Bohnstedt was then required to report to an in-patient program for a period of 45 days. She then completed the 45 days, and was ordered to report to an outpatient program.

149.    While attending the outpatient program, Ms. Bohnstedt was required to meet periodically with her probation officer. Ms. Bohnstedt was given several drug and alcohol tests by her probation officer and passed all of them. On January 1, 2017, Ms. Bohnstedt had just met with her probation officer and they went over the conditions of probation and other requirements of probation. Coincidentally,

like many other SCRAM Device victims, Ms. Bohnstedt was set to terminate from the SCRAM program and live a nice quite life.

150.   However, those dreams came to a screeching halt. For the very first time after Ms. Bohnstedt got her life together, attended meetings, and eliminated alcohol from her life all together, Ms. Bohnstedt learned that SCRAM and AMS had generated a report indicating that Ms. Bohnstedt consumed alcohol.

151.   On January 10, 2017, Ms. Bohnstedt learned from her probation officer that SCRAM and AMS issued the report and that Ms. Bohnstedt was in violation of her SCRAM conditions.

152.   Coincidentally, that same day, Ms. Bohnstedt was scheduled to have the SCRAM Device removed. Defendants SCRAM and AMS indicated in the SCRAM report that Ms. Bohnstedt tampered with the SCRAM Device and consumed alcohol. This is an impossibility due to the facts that both SCRAM and AMS advertise that when a SCRAM customer attempts to defeat the technology by placing an object over or between the sensor (IR) system of the SCRAM Device, then the SCRAM Device is unable to reach out an absorb a sweat sample necessary to determine if the customer consumed alcohol. Based on the statements and omissions by the Defendants, it is clear that there is no way possible that the SCRAM Device can do both.

153.   As a direct result of the SCRAM and AMS report that was sent to the Court, the trial Court then issued a bench warrant for Ms. Bohnstedts arrest. Due to the fact that Ms. Bohnstedt had done nothing wrong, and did not consume any form of alcohol, Ms. Bohnstedt turned herself in and was held in jail for five days and was then released. While sitting in jail, Defendants SCRAM and AMS caused Ms. Bohnstedt to lose her job, home, and other personal property.

154.   Once in Court, Ms. Bohnstedt contested the violation and received a 90-day sentence as a result of the false report. Due to the SCRAM Device being

1    unreliable, there is no way the SCRAM Device can provide and absorb a reading,

2    as well as make a determination that there is a tamper.

3        155.   Ms. Bohnstedt paid a total of $ 2,400.00 to SCRAM and AMS for

4    their alcohol monitoring service.

5        156.   Had Ms. Bohnstedt known or been aware that the SCRAM Device

6    registered false positive test results, did not timely inform the user when the device

7    was detecting the presence of alcohol vapors, and that the Defendants AMS and

8    SCRAM would not timely inform Ms. Bohnstedt once they had determined that an

9    alleged alcohol monitoring event occurred, she would have never have agreed to

10   the said purchase of Defendants' alcohol monitoring service as a condition of her

11   bond, or would have tried to locate another AMS and SCRAM monitoring

12   company, or petitioned the Court of Appeals to have the condition vacated based

13   on the fact that Ms. Bohnstedt already had an interlock device installed for the

14   same case.

15   **CLASS DEFINTITIONS AND RULE 23 PREREQUISITES**

16       Plaintiffs bring this action on their own behalf, and also on behalf of the

17   various classes of all other persons similarly situated, pursuant to Federal Rule 23

18   of the Federal Rules of Civil Procedure.

19       **Numerosity:**    In accordance with F.R.Civ. P. Rule 23(a), Upon

20   information and belief, the Class comprises of thousands of customers throughout

21   the United States, and is so numerous that joinder of all members of the Class is

22   impracticable. While the exact number of Class members is presently unknown

23   and can only be ascertained through discovery, Plaintiffs believe there are

24   thousands of Class members Nationwide based upon the fact that Defendants sell

25   the Testing Devices in all 50 states and Canada. Upon information and belief, each

26   Subclass is comprised of hundreds of consumers. There are over 50 persons from

27   each of the Scram offices being monitored at any given time, and there is constant

28   change and turnover in who receives a false positive report. The Plaintiffs are

PLAINTIFFS' [PROPOSED] SECOND AMENDED CLASS ACTION COMPLAINT FOR DAMAGES

informed and believe, and thereon allege, that the number of persons in each of the

classes is at least in the hundreds.

**Ascertainability:** Class members can be easily identified through the

Defendants' records or by other means. The identity of the Scram and AMS

customers is stored in SCRAM and AMS' Monitoring Web Portal.

## <u>CLASS ACTION ALLEGATIONS</u>

**Class Definition:** Plaintiffs bring this action pursuant to the Federal Rule of

Civil Procedure 23(b) (2) and Rule 23(b) (3) on behalf of themselves and a class

defined as follows:

> All persons who purchased or rented a SCRAM and
> AMS alcohol monitoring device in the United States.

Excluded from the Class are: (1) the Defendants, Defendants' agents,

subsidiaries, parents, successors, predecessors, and any entity in which Defendants

or their parents have a controlling interest, and those entities' current and former

employees, officers, and directors; (2) the Judge to whom this case is assigned and

the Judge's immediate family; (3) any person who executes and files a timely

request for exclusion from the Class; (4) any person who has had their claims in

this matter finally adjudicated and/or otherwise released; and (5) the legal

representatives, successors and assigns of any such excluded person.

157. **California Subclass Definition.** In the alternative to the Nationwide

Class definition articulated above, Plaintiffs Roseanne Hansen, and Jennifer Oh,

seek to represent a California Subclass of similarly situated individuals, defined as

follows:

> All persons who purchased or rented a Scram and AMS
> alcohol monitoring device in the state of California or any
> other state with substantially similar statutory or common
> law theories of relief.

Excluded from the California Subclass are: (1) Defendants, Defendants' agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the California Subclass; (4) any person who has had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

158.   **Ohio Subclass Definition.** In the alternative to the Nationwide Class definition articulated above, Plaintiff Linda Soltis, individually, seeks to represent an Ohio Subclass of similarly situated individuals, defined as follows:

> All persons who purchased or rented a Scram and AMS alcohol monitoring device in the State of Ohio or any other state with substantially similar statutory or common law theories of relief.

Excluded from the Ohio Subclass are: (1) Defendants, Defendants' agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Ohio Subclass; (4) any person who has had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

159.   **South Dakota Subclass Definition.** In the said alternative to the Nationwide Class definition articulated above, Plaintiff Brooke Hoffman, individually, seeks to represent a South Dakota Subclass of similarly situated individuals, defined as follows:

1
2
3

> All persons who purchased or rented a Scram and AMS alcohol monitoring device in the State of South Dakota or any other state with substantially similar statutory or common law theories of relief.

4
5
6
7
8
9
10
11
12

Excluded from the South Dakota Subclass are: (1) Defendants, Defendants' agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the South Dakota Subclass; (4) any person who has had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

13
14
15

160. **Texas Subclass Definition.** In the alternative to the Nationwide Class definition articulated above, Plaintiff Patrick Guerrero, individually, seeks to represent a Texas Subclass of similarly situated individuals, defined as follows:

16
17
18
19

> All persons who purchased or rented a Scram and AMS alcohol monitoring device in the State of Texas or any other state with substantially similar statutory or common law theories of relief.

20
21
22
23
24
25
26
27

Excluded from the Texas Subclass are: (1) Defendants, Defendants' agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Texas Subclass; (4) any person who has had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

28

161. **Louisiana Subclass Definition.** In the alternative to the Nationwide

PLAINTIFFS' [PROPOSED] SECOND AMENDED CLASS ACTION COMPLAINT FOR DAMAGES

Class definition articulated above, Plaintiff Micah Bailey, individually, seeks to represent a Louisiana Subclass of similarly situated individuals, defined as follows:

> All persons who purchased or rented a Scram and AMS
> alcohol monitoring device in the State of Louisiana or any
> other state with substantially similar statutory or common law
> theories of relief.

Excluded from the Louisiana Subclass are: (1) Defendants, Defendants' agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Louisiana Subclass; (4) any person who has had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

162. **Minnesota Subclass Definition.** In the alternative to the Nationwide Class definition articulated above, Plaintiff Christina Bohnstedt, individually, seeks to represent a Minnesota Subclass of similarly situated individuals, defined as follows:

> All persons who purchased or rented a Scram and AMS
> alcohol monitoring device in the State of Minnesota or
> any other state with substantially similar statutory or common
> law theories of relief.

Excluded from the  Minnesota  Subclass are: (1) Defendants, Defendants' agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Minnesota Subclass; (4) any person who has had their claims in this matter finally adjudicated and/or otherwise released;

1  and (5) the legal representatives, successors and assigns of any such excluded

2  person.

3       163.   In addition to the Class definitions articulated above, Plaintiffs may

4  also seek to certify Classes with respect to particular issues of fact or law that are

5  common to their claims, pursuant to Fed. R. Civ. P. 23(c)(4). For example, to the

6  extent that, *inter alia*, reliance, materiality, intent, or foreseeability are essential

7  elements to otherwise distinct claims, Plaintiffs may seek Class certification as to

8  that particular issue or issues.

9                    **COMMON ISSUES OF FACT AND LAW**

10      In accordance with F.R. Civ. P. Rule 23(a), There is a clear well-defined

11 community of interest in the question of law and fact presented in this case.

12 Several questions of law and fact common to the claims of Plaintiffs and members

13 of the Class predominate. The common questions of fact include, but are not

14 limited to the following:

15      a)     Whether Defendants' Products are able to tell the difference between

16 environmental products that contain, and the presence of actual alcohol in the

17 wearer's body system;

18      b)     Whether the SCRAM Devices are court verified and admissible in

19 court as evidence of intoxication;

20      c)     Whether the customer of the SCRAM Devices can establish sobriety

21 at any time;

22      d)     Whether the SCRAM Devices frequently fail to transmit test results,

23 and erroneously report that users missed tests;

24      e)     Whether the SCRAM Devices are defective;

25      f)     Whether Defendants conduct violated the California Unfair

26 Competition Law ("UCL");

27

28

g)      Whether Defendants conduct violated the California False Advertising Law ("FAL");

h)      Whether Defendants conduct violated the consumer protection laws of each of the 50 states and the District of Columbia, including the California Unfair Competition Law, Bus. & Prof. Code §§17200, *et seq*. and 17500 *et seq*.; the Ohio Consumer Sales Practices Act, R.C. 1345.01, *et seq*.; the South Dakota Deceptive Trade Practices and Consumer Protection Act, SDCL § 37-24-1, *et seq*.; the Texas Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Com. Code §§ 17.41, *et seq*.; the Louisiana Unfair Trade Practices and Consumer Protection Law, LSA-R.S. 51:1401, *et seq*.; the Minnesota Prevention of Consumer Fraud Act, Minn. Stat. § 325F.68, *et seq*.;

b)      Whether Defendants' disclosed to the Plaintiffs and the class members that environmental products that contain alcohol should not be used;

c)      Whether Defendants unfairly, unlawfully and/or deceptively failed to inform class members that their Products cannot tell the difference between the presence of alcohol and environmental products that contain alcohol;

d)      Whether Defendants misled class members by, *inter alia*, representing that their Products could tell the difference between alcohol and environmental products;

e)      Whether Defendants' advertising and marketing regarding their Products sold to class members was likely to deceive class members or was unfair;

f)      Whether Defendants' and others breached fiduciary duties owed to the Plaintiffs and the Class;

g)      Whether the Defendants' and others breached fiduciary duties owed to the Plaintiffs and the Class:

h)      Whether the Defendants' aided and abetted in the breach of fiduciary duties owed to the Plaintiffs and the Class;

i)      Whether Defendants engaged in the alleged conduct knowingly,

PLAINTIFFS' [PROPOSED] SECOND AMENDED CLASS ACTION COMPLAINT FOR DAMAGES

1    recklessly, or negligently;

2         j)    The amount of revenues and profits Defendants received and/or the

3    amount of monies or other obligations lost by class members as a result of such

4    wrongdoing;

5         k)    Whether class members are entitled to injunctive and other equitable

6    relief and, if so, what is the nature of such relief; and

7         l)    Whether class members are entitled to payment of actual, incidental,

8    consequential, exemplary and/or statutory damages plus interest thereon, and if so,

9    what is the nature of such relief.

10        m)    Whether Defendants practice of waiting two weeks to turn over a

11   violation report to the client violates state law;

12        n)    Whether Defendants unjustly retained a benefit to the detriment of

13   Plaintiffs and Class members.

14        In accordance with F.R. Civ. P. Rule 23(a), there are questions of law

15   common to the class. Plaintiffs are informed and believe and thereon allege, that

16   the common questions of law include but are not limited to the following:

17        a.    Whether the Defendants are making false and misleading statements

18   to City, County and Government agencies to guarantee written contracts;

19        b.    Whether the Defendants are making known false statements to the

20   Court, Judges, and other agencies that their product is reliable;

21        c.    Whether the Defendants' false products violates State and Federal

22   law;

23        d.    Whether the Defendants' SCRAM Device can be subject to forms of

24   contamination;

25        e.    Whether the Defendants products have been accepted in the scientific

26   community;

27        f.    Whether there is a potential error rate;

28

164.  **Typicality:**  In accordance with F.R. Civ. P. Rule 23(a), Plaintiffs' claims are typical of the claims of the proposed Classes. All claims are based on the same legal and factual issues. Scram and AMS's misrepresentations, omissions, and unreliable SCRAM Device were common and uniform to all Class members. All SCRAM Devices had, and have, the same design defects and malfunctions, and SCRAM and AMS's conduct regarding these said defects and malfunctions were common and uniform to all Class members.

165.  **Adequacy of Representation:** Plaintiffs will fairly and adequately represent and protect the interests of the proposed Classes. Plaintiffs do not have any interests antagonistic to those of the proposed Classes. Plaintiffs have retained competent counsel experienced in the prosecution of this type of litigation. The questions of law and fact common to the proposed Class members predominate over any questions affecting only individual Class members.

166.  **Superiority:**  A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The expense and burden of individual litigation would make it impracticable or impossible for proposed Class members to prosecute their claims individually. The trial and the litigation of Plaintiffs' claims are manageable.

167.  Thus, the Plaintiffs have the same interests, and have suffered the same type of damages as the class members. Named Plaintiffs' claims are based upon the same or similar legal theories as the claims of the class members. Each class member suffered actual damages as a result of the Defendants' discriminatory policies. The actual damages suffered by Plaintiffs are similar in type and amount to the actual damages suffered by each class member.

168.  In accordance with F.R. Civ. P. Rule 23(a), the Named Plaintiffs will fairly and adequately protect the interests of the class. The interests of the Named Plaintiffs are consistent with and not antagonistic to the interests of the class.

169.   **Maintence and Superiority:**  In accordance with Fed.R.Civ.P. Rule 23(b)(1)(A), prosecutions of separate actions by individual members of the class would create a risk that inconsistent or varying adjudications with respect to individual members of the class would establish incompatible standards of conduct for the parties opposing the class. The trial and the litigation of Plaintiffs' claims are manageable.

170.   In accordance with Fed.R.Civ.P. Rule 23(b) (1) (B), prosecutions of Separate actions by individual members of the class would create a risk of Adjudications with respect to individual members of the class that would, as a practical matter, substantially impair or impede the interests of the other members of the class to protect their interests.

171.   In accordance with Fed.R.Civ.P. Rule 23(b) (2), Plaintiffs are informed and believe and thereon allege, that Defendants have acted on grounds fully generally applicable to the class.

172.   In accordance with Fed.R.Civ.P. Rule 23(b) (3), the questions of law or fact common to the members of the class predominate over any questions affecting only individual members and this class action is superior to other available methods for the fair and efficient adjudication of the controversy between the parties. The interests of class members in individually controlling the prosecution of a separate action is low in that most class members would be unable to individually prosecute any action at all. The amounts at stake for individuals are such that separate suits would be impracticable in that most members of the class will not be able to find counsel to represent them. It is desirable to concentrate all litigation in one forum because all of the claims arise in the same location, i.e., the County of Los Angeles. It will promote judicial efficiency to resolve the several common questions of law and fact in one forum rather than in multiple courts. Because the discrimination alleged herein is systemic, it is particularly well suited to resolution on a class basis, as the critical questions in the case may be answered

on a class wide basis.

173.   Plaintiffs do not know the identities of the class members. The Plaintiffs are informed and believes, and thereon allege, that the identities of the class members are ascertainable from SCRAM records, in particular the SCRAM computer systems used to track and identify SCRAM clients. Plaintiffs are hereby informed and believe and thereon allege, that the SCRAM computer records reflect the identities, including addresses and telephone numbers, of the persons who have been using SCRAM Device.

174.   Plaintiffs do not know of any difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action. The class action is superior to any other available means to resolve the issues raised on behalf of the classes. The class action will be manageable because so many different records systems exist from which to ascertain the members of the class and to ascertain some of the proof relevant to Plaintiffs' claims. Liability can be determined on a class-wide basis based on class wide evidence because the Plaintiffs' complaint of systemic and widespread defective products and equipment that is manufactured, leased and/or sold by Defendants. Plaintiffs and the class members are entitled to statutory damages under state law and to presumed damages under federal law; and, in any event, individualization or variability in damages is not a bar to a liability certification based on common liability issues.

175.   In accordance with Fed.R.Civ.P. Rule 23(b) (3), class member's must be furnished with the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. Plaintiffs are informed and believe that SCRAM computer records contain a last known address for class members. Plaintiffs contemplate that individual notices be given to class members at such last known address by first class mail. Plaintiffs contemplate that the notice informs class members of the following:

A.      The pendency of this action, and the issues common to the class;

1    B.    The nature of the action;

2    C.    Their right to 'opt out' of the action within a given time, in

3  which event they will not be bound by a decision rendered in the class action;

4    D.    Their right, if they do not 'opt out,' to be represented by their own

5  counsel and enter an appearance in the case; otherwise, they will be represented by

6  the named Plaintiffs and their counsel; and

7    E.    Their right, if they do not 'opt out,' to share in any recovery in

8  favor of the class, and conversely to be bound by any judgment on the common

9  issues, adverse to the class.

10    Plaintiffs restate and incorporate by reference, each of the foregoing and

11  ensuing paragraphs in each of the following causes of action as if each paragraph

12  was fully set forth therein.

13  ## COUNT I

14  ### Violation of the California Unfair Competition Law

15  ### (Cal.Bus. & Prof. Code §§ 17200, *et.seq*)

16  ### (On Behalf of Plaintiffs and the Nationwide Class, or in the Alternative, on

17  ### Behalf of Plaintiffs Roseanne Hansen, Jennifer Oh and the California

18  ### Subclass)

19    176.  Plaintiffs re-allege and incorporate by reference the paragraphs of this

20  Class Action Complaint as if set forth herein.

21    177.  To the extent that the Nationwide Class cannot assert claims under the

22  UCL, Plaintiffs Roseanne Hansen and Jennifer Oh, bring Count I, individually, and

23  on behalf of the California Subclass, against Defendants.

24    178.  Cal.Bus. & Prof.Code § 17200 makes unlawful fraudulent business

25  acts or practices, and unfair, deceptive, untrue, or misleading advertising.

26    179.  Each Defendant is a "person" as defined by Cal.Bus. & Prof.Code §

27  17201.

28

180.   By designing, marketing, and selling SCRAM Devices from the State of California, Defendants SCRAM and AMS affected commerce and trade within the State of California.  Most of the misrepresentations and omissions alleged herein were contained on SCRAM and AMS's website, which is maintained in California. Defendants created, developed, and approved of the marketing materials containing the misrepresentations and omissions alleged herein at the SCRAM and AMS headquarters in California.

181.   When Plaintiffs and the members of the Class purchased or rented the SCRAM Device, those payments were processed and the money was sent to the SCRAM and AMS headquarters in California.

182.   Within four (4) years preceding the filing of this Class Action Complaint, and at all times mentioned herein, Defendants have engaged, and continue to engage, in unfair, unlawful and deceptive trade practices in California by engaging in the unfair, deceptive and unlawful business practices outlined in this Class Action Complaint. In particular, Defendants have engaged, and continue to engage, in unfair, unlawful and deceptive trade practices by, without limitation, the following:

a.   deceptively representing to Plaintiffs, and those similarly situated, that their products are reliable and can make a determination if alcohol is present in the wearers' system, as opposed to the wearer trying on environmental products that contain alcohol;

b.   failing to adequately inform Plaintiffs, and those similarly situated, that the wearer should not use environmental products;

c.   failing to adequately inform Plaintiffs, and those similarly situated, that the Products did not and were not exclusively made by Scram;

d.   failing to adequately inform Plaintiffs, and those similarly situated, that the Scram device had never been accepted into the scientific community;

e.   failing to inform Plaintiffs, and those similarly situated, that the

1  monthly payment can be lowered, based on the wearer's income;

2  183.   Plaintiffs and those similarly situated relied to their detriment, on

3  Defendants' unfair, deceptive and unlawful business practices. Had Plaintiffs and

4  those similarly situated been adequately informed and not deceived by Defendants,

5  they would have acted differently by not purchasing (or paying less for) the

6  Defendants' Products.

7  184.   Defendants' acts and omissions are likely to deceive the general

8  public. Defendants engaged in these unfair practices to increase their profits.

9  Accordingly, Defendants have engaged in unlawful trade practices, as defined and

10  prohibited by section 17200, *et. seq.* of the California Business and Professions

11  Code. Plaintiffs seek, on behalf of those similarly situated, full restitution of

12  monies, as necessary and according to proof, to restore any and all monies acquired

13  by Defendants from Plaintiffs, the general public, or those similarly situated by

14  means of the unfair and/or deceptive trade practices complained of herein, plus

15  interest thereon. Plaintiffs seek, on behalf of those similarly situated, an injunction

16  to prohibit Defendants from continuing to engage in the unfair trade practices

17  complained of herein.

18  185.   The acts complained of herein occurred, at least in part, within four

19  (4) years preceding the filing of this Class Action Complaint.

20  186.   Plaintiffs and those similarly situated are further entitled to and do

21  seek both a declaration that the above-described trade practices are unfair,

22  unlawful and/or fraudulent, and injunctive relief restraining Defendants from

23  engaging in any of such deceptive, unfair and/or unlawful trade practices in the

24  future. Such misconduct by Defendants, unless and until enjoined and restrained by

25  order of this Court, will continue to cause injury in fact to the general public and

26  the loss of money and property in that Defendants will continue to violate the laws

27  of California, unless specifically ordered to comply with the same. Further, this

28  expectation of future violations will require current and future customers to

1    repeatedly and continuously seek legal redress in order to recover monies paid to

2    Defendants to which Defendants are not entitled for services not completely

3    rendered. Plaintiffs, and those similarly situated and/or other consumers

4    nationwide have no other adequate remedy at law, to ensure future compliance

5    with the California Business and Professions Code alleged to have been violated

6    herein.

7         187.   As a direct and proximate result of such actions, Plaintiffs and the

8    other members of the Class have suffered and continue to suffer injury in fact and

9    have lost money and/or property as a result of such deceptive, unfair and/or

10   unlawful trade practices and unfair competition in an amount which will be proven

11   at trial, but which is in excess of the jurisdictional minimum of this Court. Among

12   other things, Plaintiffs and the Class lost the amount they paid for the Defendants'

13   Defective Products.

14        188.   Due to Defendants' misrepresentations and omissions described

15   above, Plaintiffs, individually, and on behalf of the Class, also seek injunctive

16   relief, pursuant to Cal. Bus. & Prof. Code § 17203. Plaintiffs seek an order (1)

17   requiring Defendants to cease the deceptive and unfair practices described herein;

18   (2) requiring Defendants to change their marketing and advertising materials,

19   including their website, remove all SCRAM Devices and the false and misleading

20   descriptions of the SCRAM Device from the market to have them maintained,

21   recalibrated, and approved by federal regulators, and to reflect the true certification

22   of the SCRAM Device, and lack of court approval as admissible evidence of

23   intoxication; and (4) requiring Defendants to disclose that their product frequently

24   and repeatedly displays error messages, false positives, false tampers and also

25   frequently fails to transmit test results to the internet, and erroneously reports that

26   users missed scheduled tests.

27        189.   In prosecuting this action for the enforcement of important rights

28   affecting the public interest, Plaintiffs seek the recovery of attorneys' fees pursuant

1    to the California Code of Civil Procedure § 1021.5, which is clearly available to a

2    prevailing plaintiff who wins relief for the general public.

3

4

5

6                              **PRAYER FOR RELIEF**

7            WHEREFORE, Plaintiffs, individually, and on behalf of the Class, pray for

     an Order as follows:

8
                A.    Finding that this action satisfies the prerequisites for
9                     maintenance as a class action set forth in Fed. R. Civ. P. 23,
                      and certifying the Class defined herein;
10
                B.    Designating Plaintiffs as representatives of the Class and
11                    their undersigned counsel as Class Counsel;
                C.    Entering judgment in favor of Plaintiffs and the Class and
12                    against Defendants, jointly and severally;

13              D.    Ordering disgorgement of the money that Plaintiffs and the
                      Class paid to purchase or rent the SCRAM Devices, and
14                    awarding the disgorged money as Restitution Damages to
                      Plaintiffs and the Class, and any other equitable relief that may
15                    be appropriate, and interest thereon, as allowed or required by
                      law;
16
                E.    Enjoining Defendants' conduct as requested herein, and
17                    ordering them to cease any and all deceptive and unfair trade
                      practices;
18
                F.    Awarding Plaintiffs, reasonable attorneys' fees and costs, and
19                    interest thereon, as allowed or required by law; and

20              G.    Granting all such further and other relief as the Court deems
                      just and appropriate.
21
                                    **COUNT II**
22
                  **Violation of the California False Advertising Law**
23
                    **(Cal.Bus. & Prof. Code §§ 17500, *et.seq*)**
24
     **(On Behalf of Plaintiffs and the Nationwide Class, or in the Alternative, on**
25
         **Behalf of Plaintiffs Roseanne Hansen, Jennifer Oh and the California**
26
                                    **Subclass)**
27
            190.   Plaintiffs re-allege and incorporate by reference the paragraphs of this
28

1    Class Action Complaint as if set forth herein.

2        191.   To the extent that the Nationwide Class cannot assert claims under the

3    FAL, Plaintiffs Roseanne Hansen and Jennifer Oh, brings Count II, individually,

4    and on behalf of the California Subclass, against Defendants.

5        193.   Cal.Bus. & Prof.Code § 17500 makes unlawful fraudulent business

6    acts or practices, and unfair, deceptive, untrue, or misleading advertising.

7        194.   Each Defendant is a "person" as defined by Cal.Bus. & Prof.Code §

8    17506.

9        195.   By designing, marketing, and selling the SCRAM Devices from the

10   State of California, Defendants affected commerce and trade within the State of

11   California.

12       196.   Most of the misrepresentations and omissions alleged herein were

13   contained on SCRAM and AMS's website, which is maintained in California.

14   Defendants created, developed, and approved of the marketing materials

15   containing the misrepresentations and omissions alleged herein at SCRAM and

16   AMS's headquarters in California.

17       197.   Defendants violated, and continue to violate, Cal.Bus. & Prof.Code §

18   17500 when, in marketing and selling SCRAM Devices, Defendants made and

19   make false or misleading statements, such as that the SCRAM Devices were

20   approved by the courts as admissible evidence of intoxication.

21       198.   Defendants intended, and still intend, that Plaintiffs and the members

22   of the Class rely upon Defendants' misrepresentations and omissions concerning

23   the certifications, approvals, quality, characteristics, and reliability of their

24   SCRAM Device.

25       199.   Defendants' misrepresentations and omissions possessed the tendency

26   or capacity to mislead and create the likelihood of deception.

27

28

PLAINTIFFS' [PROPOSED] SECOND AMENDED CLASS ACTION COMPLAINT FOR DAMAGES

200.   Defendants' actions, as set forth herein, were acts related to the advertisement and sale of consumer merchandise, and constitute unfair and deceptive trade practices in violation of Cal.Bus. & Prof.Code § 17500.

201.   Defendants' actions, as set forth herein, are unfair business practices because they offend an established public policy and are immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

202.   Defendants engaged in these false, misleading and deceptive advertising and marketing practices to increase their profits. Accordingly, Defendants have engaged in false advertising, as defined and prohibited by section 17500, *et. seq.*, of the California Business and Professions Code.

203.   The aforementioned practices, which Defendants used, and continue to use, to their significant financial gain, also constitutes unlawful competition and provides an unlawful advantage over Defendants' competitors as well as injury to the general public.

204.   Plaintiffs seek, on behalf of those similarly situated, full restitution of monies, as necessary and according to proof, to restore any and all monies acquired by Defendants from Plaintiffs, the general public, or those similarly situated by means of the false, misleading and deceptive advertising and marketing practices complained of herein, plus interest thereon.

205.   Plaintiffs seek, on behalf of those similarly situated, an injunction to prohibit Defendants from continuing to engage in the false, misleading and deceptive advertising and marketing practices complained of herein. The acts complained of herein occurred, at least in part, within four (4) years preceding the filing of this Class Action Complaint.

206.   Plaintiffs and those similarly situated are further entitled to and do seek both a declaration that the above-described practices constitute false, misleading and deceptive advertising, and injunctive relief restraining Defendants from engaging in any such advertising and marketing practices in the future. Such

misconduct by Defendants, unless and until enjoined and restrained by order of this Court, will continue to cause injury-in-fact, to Plaintiffs and the general public and the loss of money and property in that the Defendants will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future customers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendants to which Defendants are not entitled. Plaintiffs, those similarly situated and/or other consumers nationwide have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

207.   As a direct and proximate result of such actions, Plaintiffs and the other members of the Class have suffered, and continue to suffer, injury in fact and have lost money and/or property as a result of such false, deceptive and misleading advertising in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

208.   Due to Defendants' misrepresentations and omissions described above, Plaintiffs, individually, and on behalf of the Class, also seek injunctive relief, pursuant to Cal.Bus. & Prof.Code § 17535. Plaintiffs seek an order (1) requiring Defendants to cease the deceptive and unfair practices described herein; (2) requiring Defendants to change their marketing and advertising materials, including their website, remove all SCRAM Devices and the false and misleading descriptions of the SCRAM Device from the market to have them maintenance, recalibrated, and approved by federal regulators, and to reflect the true certification of the SCRAM Device, and lack of court approval as admissible evidence of intoxication; and (4) requiring Defendants to disclose that their product frequently and repeatedly displays error messages, false positives, false tampers and also frequently fails to transmit test results to the internet, and erroneously reports that users missed scheduled tests.

209.   In prosecuting this action for the enforcement of important rights affecting the public interest, Plaintiffs seek the recovery of attorneys' fees pursuant to the California Code of Civil Procedure § 1021.5, which is available to a prevailing plaintiff who wins relief for the general public.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually, and on behalf of the Class, pray for an Order as follows:

A.   Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23, and certifying the Class defined herein;

B.   Designating Plaintiffs as representatives of the Class and their undersigned counsel as Class Counsel;

C.   Entering judgment in favor of Plaintiffs and the Class and against Defendants, jointly and severally;

D.   Ordering disgorgement of the money that Plaintiffs and the Class paid to purchase or rent the SCRAM Devices, and awarding the disgorged money as Restitution Damages to Plaintiffs and the Class, and any other equitable relief that may be appropriate, and interest thereon, as allowed or required by law;

E.   Enjoining Defendants' conduct as requested herein, and ordering them to cease any and all deceptive and unfair trade practices;

F.   Awarding Plaintiffs reasonable attorneys' fees and costs, and interest thereon, as allowed or required by law; and

G.   Granting all such further and other relief as the Court deems just and appropriate.

## **COUNT III**

### **Violation of the Ohio Consumer Sales Practices Act, R.C. 1345.01, *et seq.***

### **(On Behalf of Plaintiff Linda Soltis and the Ohio Subclass)**

### **(In the Alternative to Counts I, and II)**

210.   Plaintiff Linda Soltis re-allege and incorporate by reference the paragraphs of this Class Action Complaint as if set forth herein.

211.   To the extent that the Nationwide Class cannot assert claims under the UCL, and FAL, Plaintiff Linda Soltis brings Count III, individually, and on behalf of the Ohio Subclass, against Defendants.

212.   At all relevant times, there was in full force and effect the Ohio Consumer Sales Practices Act, R.C. 1345.01, *et seq*.

213.   At all relevant times, Defendants were engaged in the business of manufacturing, distributing, advertising, and selling the SCRAM Devices.

214.   In providing various advices, mortgage brokerage services, lending services, and otherwise through its relations and communications with Plaintiffs, Defendants are subject to the provisions of the Ohio Consumer Sales Practices Act, ORC sec. 1345.01 et. seq.

215.   Pursuant to ORC sec. 1345.09, Defendants are liable to Plaintiffs for each violation of the OCSPA in the amount equal to three (3) times actual damages in addition to Plaintiffs being entitled to injunctive relief barring any further violations pursuant to ORC sec. 1345.09(D).

216.   Defendants are each "persons" pursuant to OCSPA 1345.01(b), et seq.,

217.   Defendants engaged, and still engage, in unfair or deceptive acts or practices in violation of MCL 445.903(1)(c) when, in marketing and selling their SCRAM Devices, Defendants misrepresent the sponsorship, approval, status, affiliation, and connection of goods by representing that the SCRAM Devices are approved by the courts as admissible evidence of intoxication.

218.   Defendants engaged, and still engage, in unfair or deceptive acts or practices in violation of OCSPA 1345.01(A)(B)(2), when, in marketing and selling their SCRAM Devices, Defendants misrepresent the standard, quality, and grade of goods by representing that the SCRAM Devices evidentiary grade, professional grade, and approved by the courts as admissible evidence of intoxication.

219. Defendants engaged, and still engage, in unfair or deceptive acts or practices in violation of OCSPA 1345.01(A)(B)(2) when, in marketing and selling their SCRAM Devices, Defendants made misrepresentations and omissions of material facts that misled or deceived Plaintiff Linda Soltis and other members of the Ohio Subclass regarding the certifications, approvals, quality, characteristics, and reliability of the SCRAM Devices.

220. Defendants intended, and still intend, that Plaintiff Soltis and the members of the Ohio Subclass rely upon Defendants' misrepresentations and the omissions concerning the certifications, approvals, quality, characteristics, and reliability of the SCRAM Devices.

221. Defendants' misrepresentations and omissions possess the tendency or capacity to mislead and create the likelihood of deception.

222. The facts that Defendants misrepresented, concealed from, or failed to disclose to Plaintiff Soltis and the members of the Ohio Subclass are material because a reasonable consumer would consider them important factors in deciding whether to purchase or lease the SCRAM Devices.

223. Defendants' actions were and are unfair business practices because they are contrary to public policy.

224. Acting as reasonable consumers, had Plaintiff Soltis and the Ohio Subclass known that the SCRAM Devices were not approved by the courts as admissible evidence of intoxication, are not professional grade, evidentiary grade, or law enforcement grade, and do not allow users to establish their sobriety at any time, they would not have purchased or rented the SCRAM Devices.

225. Plaintiff Soltis and the Ohio Subclass members could not have reasonably avoided the injuries suffered by purchasing or renting the SCRAM Devices because it was reasonable for Plaintiff Soltis and the Ohio Subclass members to rely on Defendants' misrepresentations and omissions.

226.   As a direct and proximate result of these unfair, deceptive and unconscionable commercial practices, Plaintiff Soltis and the members of the Ohio Subclass have suffered damages in the form of the money they paid to purchase or rent the SCRAM Devices (*i.e.*, restitution damages), plus additional incidental and consequential damages (*i.e.*, actual damages) resulting from the use of the SCRAM Devices. Plaintiff Soltis, individually, and on behalf of the Ohio Subclass, seeks restitution damages, and actual damages.

227.   The substantial injury to consumers outweighs any benefit to consumers or competition that may result from Defendants' misrepresentations regarding their SCRAM Devices.

228.   Due to Defendants' misrepresentations and omissions described above, Plaintiff Soltis, individually, and on behalf of the Ohio Subclass, also seeks injunctive relief. Plaintiff Soltis seeks an order (1) requiring Defendants to cease the deceptive and unfair practices described herein; (2) requiring Defendants to change their marketing and advertising materials, including their website, remove all said SCRAM Devices and the false and misleading descriptions of the SCRAM Device from the market to have them maintenance, recalibrated, and approved by federal regulators, and to reflect the true certification of the SCRAM Device, and lack of court approval as admissible evidence of intoxication; and (4) requiring the said Defendants to disclose that their product frequently and repeatedly displays error messages, false positives, false tampers and also frequently fails to transmit test results to the internet, and erroneously reports that users missed scheduled tests.

229.   Plaintiff Soltis also seeks the recovery of court costs and attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually, and on behalf of the Class, pray for an Order as follows:

A.    Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23, and certifying the Ohio Subclass defined herein;

B.    Designating Plaintiff Linda Soltis as representative of the Ohio Subclass and her undersigned counsel as Class Counsel;

C.    Entering judgment in favor of Plaintiff Linda Soltis and the Ohio Subclass and against Defendants, jointly and severally;

D.    Ordering disgorgement of the money that Plaintiff Linda Soltis and the Ohio Subclass paid to purchase or rent the SCRAM Devices, and awarding the disgorged money as Restitution Damages to Plaintiff Linda Soltis and the Ohio Subclass, and any other equitable relief that may be appropriate, and interest thereon, as allowed or required by law;

E.    Awarding Plaintiff Ohio and members of the Ohio Subclass their Actual Damages, including any additional incidental and consequential damages resulting from their use of the SCRAM Devices, and interest thereon, as allowed or required by law;

E.    Enjoining Defendants' conduct as requested herein, and ordering them to cease any and all deceptive and unfair trade practices;

F.    Awarding Plaintiff Linda Soltis reasonable attorneys' fees and costs, and interest thereon, as allowed or required by law; and

G.    Granting all such further and other relief as the Court deems just and appropriate.

## COUNT IV

**Violation of the South Dakota Deceptive Trade Practices and Consumer**

**Protection Act, SDCL § 37-24-1, *et seq.***

**(On Behalf of Plaintiff Brooke Hoffman and the South Dakota Subclass)**

**(In the Alternative to Counts I, II, and III)**

230.    Plaintiff Brooke Hoffman re-allege and incorporate by reference the paragraphs of this Class Action Complaint as if set forth herein.

231.    To the extent that the Nationwide Class cannot assert claims under the UCL, and FAL, Plaintiff Brooke Hoffman brings Count IV, individually, and on behalf of the South Dakota Subclass, against Defendants.

232.    At all relevant times, there was in full force and effect the South Dakota Deceptive Trade Practices and Consumer Protection Act, SDCL § 37-24-1,

*et seq.*

234.   The Defendants advertise and sell "goods or services" and/or "merchandise" in "trade" and "commerce," as meant by South Dakota Deceptive Trade Practices and Consumer Protection Act, SDCL § 37-24-1, in the form of reliable products.

235.   At all relevant times, the Defendants were engaged in the business of manufacturing, distributing, advertising, and selling the SCRAM Devices.

236.   In providing various advices, services and otherwise through its relations and communications with Plaintiffs, Defendants SCRAM and AMS are subject to the provisions of the South Dakota Deceptive Trade Practices and Consumer Protection Act, SDCL § 37-24-1(8), *et seq.*

237.   By designing, marketing, and selling SCRAM Devices from the State of South Dakota, Defendants affected commerce and trade within the State of South Dakota.

238.   Defendants are each "persons" under South Dakota Deceptive Trade Practices and Consumer Protection Act, SDCL § 37-24-1

239.   Defendants are engaged in "trade and commerce," under South Dakota Deceptive Trade Practices and Consumer Protection Act, SDCL § 37-24-1(14).

240.   Defendants SCRAM and AMS operating in South Dakota engaged in deceptive acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts with respect to the sale of the SCRAM Device in violation of S.D. Codified Laws § 37-24-6.

241.   Defendants' actions were and are unfair business practices because they are contrary to public policy.

242.   Acting as reasonable consumers, had Plaintiff Hoffman and the South Dakota Subclass known that the SCRAM Devices were not approved by the courts as admissible evidence of intoxication, are not professional grade, evidentiary

grade, and do not allow users to establish their sobriety at any time, they would not have purchased or rented the SCRAM Devices.

243.   Plaintiff Hoffman and the South Dakota Subclass members could not have reasonably avoided the injuries suffered by purchasing or renting the SCRAM Devices because it was reasonable for Plaintiff Hoffman and the South Dakota Subclass members to rely on Defendants' misrepresentations and omissions.

244.   As a direct and proximate result of these unfair, deceptive and unconscionable commercial practices, Plaintiff Hoffman and the members of the South Dakota Subclass have suffered damages in the form of the money they paid to purchase or rent the SCRAM Devices (*i.e.*, restitution damages), plus the additional incidental and consequential damages (*i.e.*, actual damages) resulting from the use of the SCRAM Devices. Plaintiff Hoffman, individually, and on behalf of the South Dakota Subclass, seeks restitution damages, and actual damages.

245.   The substantial injury to consumers outweighs any benefit to the consumers or competition that may result from Defendants' misrepresentations regarding their SCRAM Devices.

246.   Plaintiff Hoffman seek an order (1) requiring Defendants to cease the deceptive and unfair practices described herein; (2) requiring Defendants to change their marketing and advertising materials, including their website, remove all said SCRAM Devices and the false and misleading descriptions of the SCRAM Device from the market to have them maintenance, recalibrated, and approved by federal regulators, and to reflect the true certification of the SCRAM Device, and lack of court approval as admissible evidence of intoxication; and (4) requiring the said Defendants to disclose that their product frequently and repeatedly displays error messages, false positives, false tampers and also frequently fails to transmit test results to the internet, and erroneously reports that users missed scheduled tests.

247.   South Dakota Class Members seek relief under S.D. Codified Laws § 37-24-31, including, but not limited to, actual damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually, and on behalf of the Class, pray for an Order as follows:

A.   Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23, and certifying the South Dakota Subclass defined herein;

B.   Designating Plaintiff Brooke Hoffman as representative of the South Dakota Subclass and her undersigned counsel as Class Counsel;

C.   Entering judgment in favor of Plaintiff Brooke Hoffman and the South Dakota Subclass and against Defendants, jointly and severally;

D.   Ordering disgorgement of the money that Plaintiff Brooke Hoffman and the South Dakota Subclass paid to purchase or rent the SCRAM Devices, and awarding the disgorged money as restitution damages to Plaintiff Broke Hoffman and the South Dakota Subclass, and any other equitable relief that may be appropriate, and interest thereon, as allowed or required by law;

E.   Awarding Plaintiff Brooke Hoffman and members of the South Dakota Subclass their actual damages, including any additional incidental and consequential damages resulting from their use of the SCRAM Devices, and interest thereon, as allowed or required by law;

E.   Enjoining Defendants' conduct as requested herein, and ordering them to cease any and all deceptive and unfair trade practices;

F.   Awarding Plaintiff Brooke Hoffman reasonable attorneys' fees and costs, and interest thereon, as allowed or required by law; and

G.   Granting all such further and other relief as the Court deems just and appropriate.

///

///

## COUNT V

**Violation of Texas Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Com. Code §§ 17.41, *et seq*.;**

**(On Behalf of Plaintiff Patrick Guerrero and the Texas Subclass)**

**(In the Alternative to Counts I, II, III, and IV)**

248.   Plaintiff Patrick Guerrero re-allege and incorporate by reference the paragraphs of this Class Action Complaint as if set forth herein.

249.   To the extent that the Nationwide Class cannot assert claims under the UCL, and FAL, Plaintiff Patrick Guerrero brings Count IV, individually, and on behalf of the Texas Subclass, against Defendants.

250.   At all relevant times, Defendants violated the Texas Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Com. Code §§ 17.41, *et seq* regarding business practices and representations that are false, deceptive, and also misleading.

251.   Defendants have engaged in false, deceptive, and misleading acts and practices in the course of trade and commerce as defined in, and declared unlawful by § 17.46(a) and (b) of the Texas Deceptive Trade Practices-Consumer Protection Act.

252.   Defendants have in the conduct of trade and commerce, engaged in false, misleading, or deceptive acts of practices in violation of § 17.46(a) and (b) Texas Deceptive Trade Practices-Consumer Protection Act. Such acts include:

a.      representing that services are of particular standard, quality, or grade when they are of another § 17.46 (b)(7) of the DTPA;

b.      Advertising goods or services with intent not to sell them as advertised, in violation of § 17.46 (b)(9) of the DTPA;

(a)     Causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services, in violation of DTPA, § 17.46(b)(2);

(b)     Causing confusion or misunderstanding as to affiliation, connection,

or association with, or certification by, another, in violation of DTPA, § 17.46(b)(3)

(c)     Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have, or that a person has a sponsorship, approval, status, affiliation, or connection which he does not have, in violation of DTPA, § 17.46(b)(5);

(d)     Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another, in violation of the DTPA, § 17.46(b)(7); and

e)     Failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such crucial information was intended to induce the consumer into a transaction which the consumer would not have entered had the information been disclosed, in violation of the DTPA, § 17.46(b)(24);

253.   Due to Defendants' misrepresentations and omissions described above, Plaintiff Patrick Guerrero, individually, and on behalf of the Texas Subclass, also seeks injunctive relief. Plaintiff Patrick Guerrero seek an order (1) requiring Defendants to cease the deceptive and unfair practices described herein; (2) requiring Defendants to change their marketing and advertising materials, including their website, remove all said SCRAM Devices and the false and the misleading descriptions of the SCRAM Device from the market to have them maintenance, recalibrated, and approved by federal regulators, and to reflect the true certification of the SCRAM Device, and lack of court approval as admissible evidence of intoxication; and (4) requiring the said Defendants to disclose that their product frequently and repeatedly displays error messages, false positives, false tampers and also frequently fails to transmit test results to the internet, and erroneously reports that users missed scheduled tests.

PLAINTIFFS' [PROPOSED] SECOND AMENDED CLASS ACTION COMPLAINT FOR DAMAGES

254. Plaintiff Patrick Guerrero also seeks the recovery of court costs and attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually, and on behalf of the Class, pray for an Order as follows:

A. Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23, and certifying the Texas Subclass defined herein;

B. Designating Plaintiff Patrick Guerrero as representative of the Texas Subclass and her undersigned counsel as Class Counsel;

C. Entering judgment in favor of Plaintiff Patrick Guerrero and the Texas Subclass and against Defendants, jointly and severally;

D. Ordering disgorgement of the money that Plaintiff Patrick Guerrero and the Texas Subclass paid to purchase or rent the SCRAM Devices, and awarding the disgorged money as Restitution Damages to Plaintiff Patrick Guerrero and the Texas Subclass, and any other equitable relief that may be appropriate, and interest thereon, as allowed or required by law;

E. Awarding Plaintiff Patrick Guerrero and members of the Texas Subclass their Actual Damages, including any additional incidental and consequential damages resulting from their use of the SCRAM Devices, and interest thereon, as allowed or required by law;

E. Enjoining Defendants' conduct as requested herein, and ordering them to cease any and all deceptive and unfair trade practices;

F. Awarding Plaintiff Patrick Guerrero reasonable attorneys' fees and costs, and interest thereon, as allowed or required by law; and

G. Granting all such further and other relief as the Court deems just and appropriate.

## COUNT VI

## Violation of Louisiana Unfair Trade Practices and Consumer Protection Law, LSA-R.S. 51:1401, *et seq.*;

## (On Behalf of Plaintiff Micah Bailey and the Louisiana Subclass)

## (In the Alternative to Counts I, II, III, IV and V)

255.   Plaintiff Micah Bailey re-allege and incorporate by reference the paragraphs of this Class Action Complaint as if set forth herein.

256.   To the extent that the Nationwide Class cannot assert claims under the UCL, and FAL, Plaintiff Micah Bailey brings Count IV, individually, and on behalf of the Louisiana Subclass, against Defendants.

257.   At all relevant times, Defendants SCRAM and AMS violated La. Rev. Stat. Ann. § 51:1405 regarding business practices and representations that are false, deceptive, and also misleading.

258.   The Louisiana Unfair Trade Practices and Consumer Protection Law ("Louisiana CPL") makes unlawful "deceptive acts or practices in the conduct of any trade or commerce."  La. Rev. Stat. Ann. § 51:1405(A).

259.   Defendants, Plaintiffs, and class members are "persons" within the meaning of La. Rev. Stat. Ann. § 51:1402(8).

260.   Plaintiffs and class members are "consumers" within the meaning of La. Rev. Stat. Ann. § 51:1402(1).

261.   Each Defendant engaged in "trade" or "commerce" within the meaning of La. Rev. Stat. Ann. § 51:1402(9).

262.   SCRAM and AMS also engaged in the unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the SCRAM Devices.

263.   SCRAM and AMS's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

264.   SCRAM and AMS intentionally and knowingly misrepresented material facts regarding the SCRAM Device with intent to mislead Plaintiffs and the Louisiana Class.

265.   SCRAM and AMS knew or should have known that its conduct violated the Louisiana CPL.

266.   SCRAM and AMS owed Plaintiffs a duty to disclose the unreliability in the and defects, because SCRAM and AMS:

      a.    Possessed exclusive knowledge;

      b.    Intentionally concealed the foregoing from Plaintiffs; and/or

      c.    Made incomplete representations about the reliability and the performance of the SCRAM Device, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

267.   Plaintiffs and the Louisiana Class suffered ascertainable loss caused by SCRAM and AMS's misrepresentations and its concealment of and failure to disclose material information.

268.   As a direct and proximate result of their violations of the Louisiana CPL, Plaintiffs and the Louisiana Class have suffered injury-in-fact and/or actual damage.

269.   Pursuant to La. Rev. Stat. Ann. § 51:1409, Plaintiff Micah Bailey seek to recover actual damages in an amount to be determined at trial; treble damages for knowing violations of the Louisiana CPL; an order enjoining each Defendant's unfair, unlawful, and/or deceptive practices; declaratory relief; attorneys' fees; and any other just and proper relief available under La. Rev. Stat. Ann. § 51:1409.

270.   Due to Defendants' misrepresentations and omissions described above, Plaintiff Micah Bailey, individually, and on behalf of Louisiana Subclass, also seeks injunctive relief. Plaintiff Micah Bailey seek an order (1) requiring Defendants to cease the deceptive and unfair practices described herein; (2) requiring Defendants to change their marketing and advertising materials, including their website, remove all said SCRAM Devices and the false and the misleading descriptions of the SCRAM Device from the market to have them maintenance, recalibrated, and approved by federal regulators, and to reflect the

true certification of the SCRAM Device, and lack of court approval as admissible

evidence of intoxication; and (4) requiring the said Defendants to disclose that

their product frequently and repeatedly displays error messages, false positives,

false tampers and also frequently fails to transmit test results to the internet, and

erroneously reports that users missed scheduled tests.

271.   Plaintiff Micah Bailey also seeks the recovery of court costs and

attorneys' fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually, and on behalf of the Class, pray for

an Order as follows:

    A.    Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23, and certifying the Louisiana Subclass defined herein;

    B.    Designating Plaintiff Micah Bailey as representative of the Louisiana Subclass and his undersigned counsel as Class Counsel;

    C.    Entering judgment in favor of Plaintiff Micah Bailey and the Louisiana Subclass and against Defendants, jointly and severally;

    D.    Ordering disgorgement of the money that Plaintiff Micah Bailey and the Louisiana Subclass paid to purchase or rent the SCRAM Devices, and awarding the disgorged money as Restitution Damages to Plaintiff Micah Bailey and the Louisiana Subclass, and any other equitable relief that may be appropriate, and interest thereon, as allowed or required by law;

    E.    Awarding Plaintiff Micah Bailey and members of the Louisiana Subclass their Actual Damages, including any additional incidental and consequential damages resulting from their use of the SCRAM Devices, and interest thereon, as allowed or required by law;

    E.    Enjoining Defendants' conduct as requested herein, and ordering them to cease any and all deceptive and unfair trade practices;

    F.    Awarding Plaintiff Micah Bailey reasonable attorneys' fees and costs, and interest thereon, as allowed or required by law; and

    G.    Granting all such further and other relief as the Court deems just and appropriate.

**COUNT VII**

**Violation of the Minnesota Prevention of Consumer Fraud Act, Minn. Stat. §**

**325F.68, *et seq*.;**

**(On Behalf of Plaintiff Christina Bonstedt and the Minnesota Subclass)**

**(In the Alternative to Counts I, II, III, IV, V, VI)**

272.   Plaintiff Christina Bonstedt re-allege and incorporate by reference the paragraphs of this Class Action Complaint as if set forth herein.

273.   To the extent that the Nationwide Class cannot assert claims under the UCL, and FAL, Plaintiff Christina Bonstedt brings Count VII, individually, and on behalf of the Minnesota Subclass, against Defendants.

274.   The SCRAM Device constitute "merchandise" within the meaning of Minn. Stat. § 325F.68(2).

275.   The Minnesota Prevention of Consumer Fraud Act ("Minnesota CFA") prohibits "[t]he act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby ...." Minn. Stat. § 325F.69(1). Defendants SCRAM and AMS participated in misleading, false, or deceptive acts that violated the Minnesota CFA.

276.   Defendants concealed the existence of the unreliability from Plaintiff and the other Minnesota Class members. Defendants concealed these facts with the intention that Plaintiff and the Minnesota Class members would rely thereon.

277.   Defendants thus violated the Minnesota CFA by, at minimum employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the SCRAM Device.

278.   Defendants had an ongoing duty to all customers to refrain from unfair and deceptive practices under the Minnesota CFA. All SCRAM customers suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices.

279.   Defendants' violations present a continuing risk to Plaintiff as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest. 145. As a direct and proximate result of Defendants' violations of the Minnesota CFA, Plaintiff and the Minnesota Class have suffered injury-in-fact and/or actual damage. Pursuant to the Minn. Stat. § 8.31(3a), Plaintiff and the Minnesota Class seek actual damages, attorneys' fees, and any other just and proper relief available under the Minnesota CFA.

280.   Due to Defendants' misrepresentations and omissions described above, Plaintiff Christina Bonstedt, individually, and on behalf of Minnesota Subclass, also seeks injunctive relief. Plaintiff Christina Bonstedt seek an order (1) requiring Defendants to cease the deceptive and unfair practices described herein; (2) requiring Defendants to change their marketing and advertising materials, including their website, remove all said SCRAM Devices and the false and the misleading descriptions of the SCRAM Device from the market to have them maintenance, recalibrated, and approved by federal regulators, and to reflect the true certification of the SCRAM Device, and lack of court approval as admissible evidence of intoxication; and (4) requiring the said Defendants to disclose that their product frequently and repeatedly displays error messages, false positives, false tampers and also frequently fails to transmit test results to the internet, and erroneously reports that users missed scheduled tests.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually, and on behalf of the Class, pray for an Order as follows:

A.   Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23,

and certifying the Minnesota Subclass defined herein;

B.   Designating Plaintiff Christina Bonstedt as representative of the Minnesota Subclass and his undersigned counsel as Class Counsel;

C.   Entering judgment in favor of Plaintiff Christina Bonstedt and the Minnesota Subclass and against Defendants, jointly and severally;

D.   Ordering disgorgement of the money that Plaintiff Christina Bonstedt and the Minnesota Subclass paid to purchase or rent the SCRAM Devices, and awarding the disgorged money as restitution damages to Plaintiff Christina Bonstedt and the Minnesota Subclass, and any other equitable relief that may be appropriate, and interest thereon, as allowed or required by law;

E.   Awarding Plaintiff Christina Bonstedt and members of the Minnesota Subclass their actual damages, including any additional incidental and consequential damages resulting from their use of the SCRAM Devices, and interest thereon, as allowed or required by law;

E.   Enjoining Defendants' conduct as requested herein, and ordering them to cease any and all deceptive and unfair trade practices;

F.   Awarding Plaintiff Christina Bonstedt reasonable attorneys' fees and costs, and interest thereon, as allowed or required by law; and

G.   Granting all such further and other relief as the Court deems just and appropriate.

## COUNT VIII

### Violation of the Consumer Fraud and Deceptive Trade Practices Acts

### of the Various States and District of Columbia

### (On Behalf of Plaintiffs and the Nationwide Class)

281.   Plaintiffs re-allege and incorporate by reference the paragraphs of this Class Action Complaint as if set forth herein.

282.   Plaintiffs bring this Count individually, and on behalf of all similarly situated residents of each of the 50 states and the District of Columbia (*i.e.*, the Class) for violations of the respective statutory consumer protection laws, as follows:

1    a.    the Alabama Deceptive Trade Practices Act, Ala.Code 1975, § 8–19–

2   1, *et seq*.;

3    b.    the Alaska Unfair Trade Practices and Consumer Protection Act, AS §

4   45.50.471, *et seq*.;

5    c.    the Arizona Consumer Fraud Act, A.R.S §§ 44-1521, *et seq*.;

6    d.    the Arkansas Deceptive Trade Practices Act, Ark.Code §§ 4-88-101,

7   *et seq*.;

8    e.    the California Unfair Competition Law, Bus. & Prof. Code §§17200,

9   *et seq*. and 17500 *et seq*.;

10    f.    California Consumers Legal Remedies Act, Civil Code §1750, *et seq*.;

11    g.    Colorado Consumer Protection Act, C.R.S.A. §6-1-101, *et seq*.;

12    h.    Connecticut Unfair Trade Practices Act, C.G.S.A. § 42-110, *et seq*.;

13    i.    the Delaware Consumer Fraud Act, 6 Del. C. § 2513, *et seq*.;

14    j.    the D.C. Consumer Protection Procedures Act, DC Code § 28-3901, *et*

15   *seq*.;

16    k.    the Florida Deceptive and Unfair Trade Practices Act, FSA § 501.201,

17   *et seq*.;

18    l.    the Georgia Fair Business Practices Act, OCGA § 10-1-390, *et seq*.;

19    m.    the Hawaii Unfair Competition Law, H.R.S. § 480-1, *et seq*.;

20    n.    the Idaho Consumer Protection Act, I.C. § 48-601, *et seq*.;

21    o.    the Illinois Consumer Fraud and Deceptive Business Practices Act,

22   815 ILCS 501/1 *et seq*.;

23    p.    Indiana Deceptive Consumer Sales Act, IN ST § 24-5-0.5-2, *et seq*.;

24    q.    The Iowa Private Right of Action for Consumer Frauds Act, Iowa

25   Code Ann. § 714H.1, *et seq*.;

26    r.    the Kansas Consumer Protection Act, K.S.A. § 50-623, *et seq*.;

27    s.    the Kentucky Consumer Protection Act, KRS 367.110, *et seq*.;

28

t.      the Louisiana Unfair Trade Practices and Consumer Protection Law, LSA-R.S. 51:1401, *et seq.*;

u.      the Maine Unfair Trade Practices Act, 5 M.R.S.A. § 205-A, *et seq.*;

v.      the Maryland Consumer Protection Act, MD Code, Commercial Law, § 13-301, *et seq.*;

w.      the Massachusetts Regulation of Business Practices for Consumers Protection Act, M.G.L.A. 93A, *et seq.*;

x.      the Michigan Consumer Protection Act, MCL 445.901, *et seq.*;

y.      the Minnesota Prevention of Consumer Fraud Act, Minn. Stat. § 325F.68, *et seq.*;

z.      the Mississippi Consumer Protection Act, Miss. Code Ann. § 75-24-1, *et seq.*;

aa.     the Missouri Merchandising Practices Act, V.A.M.S. § 407, *et seq.*;

bb.     the Montana Unfair Trade Practices and Consumer Protection Act of 1973, Mont. Code Ann. § 30-14-101, *et seq.*;

cc.     the Nebraska Consumer Protection Act, Neb.Rev.St. §§ 59-1601, *et se*

dd.     the Nevada Deceptive Trade Practices Act, N.R.S. 41.600, *et seq.*;

ee.     the New Hampshire Regulation of Business Practices for Consumer Protection, N.H.Rev.Stat. § 358-A:1, *et seq.*;

ff.     the New Jersey Consumer Fraud Act, N.J.S.A. 56:8, *et seq.*;

gg.     the New Mexico Unfair Practices Act, N.M.S.A. §§ 57-12-1, *et seq.*;

hh.     the New York Consumer Protection from Deceptive Acts and Practices, N.Y. GBL (McKinney) § 349, *et seq.*;

ii.     the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen Stat. § 75-1.1, *et seq.*;

jj.     North Dakota Consumer Fraud Act, N.D. Cent.Code Chapter 51-15, *et seq.*;

kk.     the Ohio Consumer Sales Practices Act, R.C. 1345.01, *et seq.*;

ll.     the Oklahoma Consumer Protection Act, 15 O.S.2001, §§ 751, *et seq.*;

mm.    the Oregon Unlawful Trade Practices Act, ORS 646.605, *et seq.*;

nn.    the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, *et seq.*;

oo.    the Rhode Island Deceptive Trade Practices Act, G.L.1956 § 6-13.1-5.2(B), *et seq.*;

pp.    the South Carolina Unfair Trade Practices Act, SC Code 1976, §§ 39-5-10, *et seq.*;

qq.    the South Dakota Deceptive Trade Practices and Consumer Protection Act, SDCL § 37-24-1, *et seq.*;

rr.     the Tennessee Consumer Protection Act, T.C.A. § 47-18-101, *et seq.*;

ss.     the Texas Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Com. Code §§ 17.41, *et seq.*;

tt.     the Utah Consumer Sales Practices Act, UT ST § 13-11-1, *et seq.*;

uu.    the Vermont Consumer Fraud Act, 9 V.S.A. § 2451, *et seq.*;

vv.    Virginia Consumer Protection Act of 1977, VA ST § 59.1-196, *et seq*;

ww.    the Washington Consumer Protection Act, RCWA 19.86.010, *et seq.*;

xx.    the West Virginia Consumer Credit And Protection Act, W.Va.Code § 46A-1-101, *et seq.*;

yy.    the Wisconsin Deceptive Trade Practices Act, WIS.STAT. § 100.18, *et seq.*; and

zz.     the Wyoming Consumer Protection Act, WY ST § 40-12-101, *et seq.*

283.   The SCRAM Devices are consumer goods.

284.   Defendants intended, and still intend, that Plaintiffs and the members of the Class rely upon Defendants' misrepresentations and omissions concerning the certifications, approvals, quality, characteristics, and reliability of their said SCRAM Devices.

285.   Defendants' misrepresentations and omissions possess the tendency or capacity to mislead and create the likelihood of deception.

286.   The above-described deceptive and unfair acts and practices were used or employed in the conduct of trade or commerce, namely, the marketing, sale, and distribution of the SCRAM Devices to Plaintiffs and Class members.

287.   The above-described deceptive and unfair acts offend public policy and cause substantial injury to consumers.

288.   Plaintiffs and the Class relied upon Defendants' misrepresentations and omissions described above.

289.   Plaintiffs and Class members could not have reasonably avoided the injuries suffered by purchasing or renting the SCRAM Devices because it was reasonable for Plaintiffs and Class members to rely on Defendants' misrepresentations and omissions.

290.   As a direct and proximate result of these unfair, deceptive and unconscionable commercial practices, Plaintiffs and the members of the Class have suffered damages in the form of the money they paid to purchase or rent the SCRAM Devices (*i.e.*, restitution damages) plus additional incidental and consequential damages (*i.e.*, actual damages) resulting from the use of the SCRAM Devices. Plaintiffs, individually, and on behalf of the Class, seek actual restitution damages, actual damages, and along with the reasonable attorneys' fees and costs.

291.   The substantial injury to consumers outweighs any benefit to consumers or competition that may result from Defendants' misrepresentations regarding their SCRAM Devices.

292.   Due to Defendants' misrepresentations and omissions described above, Plaintiff Roseanne Hansen and Jennifer bring this Count, individually, and on behalf of the California Subclass, Plaintiff Linda Solits brings this Count, individually, and on behalf of the Ohio Subclass, Plaintiff Brooke Hoffman brings this Count, individually, and on behalf of the South Dakota Subclass, Plaintiff

Patrick Guerrero brings this Count, individually, and on behalf of the Texas Subclass, Plaintiff Micha Bailey brings this Count, individually, and on behalf of the Louisiana Subclass, and Plaintiff Christina Bohnstedt brings this Count, individually, and on behalf of the Minnesota Subclass against Defendants to seek an order (1) requiring Defendants to cease the deceptive and unfair practices described herein; (2) requiring Defendants to change their marketing and advertising materials, including their website, remove all said SCRAM Devices and the false and the misleading descriptions of the SCRAM Device from the market to have them maintenance, recalibrated, and approved by federal regulators, and to reflect the true certification of the SCRAM Device, and lack of court approval as admissible evidence of intoxication; and (4) requiring the said Defendants to disclose that their product frequently and repeatedly displays error messages, false positives, false tampers and also frequently fails to transmit test results to the internet, and erroneously reports that users missed scheduled tests.

293.   Plaintiffs, and each of them also seek the recovery of court costs and attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually, and on behalf of the Class, pray for an Order as follows:

A.   Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23, and certifying the Class defined herein;

B.   Designating Plaintiffs as representatives of the Class, and their undersigned counsel as Class Counsel;

C.   Entering judgment in favor of Plaintiffs and the Class and against Defendants, jointly and severally;

D.   Ordering disgorgement of the money that Plaintiffs and the Class paid to purchase or rent the SCRAM Devices, and awarding the disgorged money as Restitution Damages to Plaintiffs and the Class, and any other equitable relief that may be appropriate, and interest thereon, as allowed or required by law;

E.     Awarding Plaintiffs and the Class their Actual Damages, including any additional incidental and consequential damages resulting from their use of the SCRAM Devices, and interest thereon, as allowed or required by law;

F.     Enjoining Defendants' conduct as requested herein, and ordering them to cease any and all deceptive and unfair trade practices;

G.     Awarding Plaintiffs reasonable attorneys' fees and costs, and interest thereon, as allowed or required by law; and

H.     Granting all such further and other relief as the Court deems just and appropriate.

## COUNT IX
### Fraudulent Misrepresentation
### (Based on California and Other States' Common Law)
### (On Behalf of Plaintiffs, the Nationwide Class, and All Subclasses)

295.   Plaintiffs re-allege and incorporate by reference the paragraphs of this Class Action Complaint as if set forth herein.

296.   To the extent that the Nationwide Class cannot assert fraudulent misrepresentation claims under California common law, Plaintiffs Roseanne Hansen and Jennifer Oh bring this Count, individually, and on behalf of the California Subclass, Plaintiff Linda Solits brings this Count, individually, and on behalf of the Ohio Subclass, Plaintiff Brooke Hoffman brings this Count, individually, and on behalf of the South Dakota Subclass, Plaintiff Patrick Guerrero brings this Count, individually, and on behalf of the Texas Subclass, Plaintiff Micha Bailey brings this Count, individually, and on behalf of the Louisiana Subclass Plaintiff Christina Bohnstedt brings this Count, individually, and on behalf of the Minnesota Subclass against Defendants.

297.   It is well established in California and other jurisdictions that a person who has been induced by fraudulent misrepresentations to enter into a contract or to make a conveyance may have the contract or conveyance set aside and secure a restitution of those benefits lost to him by the transaction. *Seeger v. Odell*, 18 Cal.2d 409, 414 (1941).

298.   "[T]he elements of a cause of action for fraudulent misrepresentation are (1) misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to induce reliance; (4) justifiable reliance; and (5) resulting damage." *Vogelsang v. Wolpert*, 227 Cal.App.2d 102, 109 (5th Dist. 1964) (quoting *Zinn v. Ex-Cell-O Corp.*, 148 Cal.App.2d 56, 68 (1st Dist. 1957)).

299.   Defendants intentionally misrepresented and concealed, and continue to misrepresent and conceal, material facts concerning the sponsorship, approval, and unreliability of the SCRAM Device.

300.   Defendants also knew that the SCRAM Devices did not have the ability to accurately record, store, and disseminate the data and reports generated by the SCRAM Devices, but Defendants concealed these facts from Plaintiff and the Class.

301.   Defendants affirmatively misrepresented and/or actively concealed material facts with the intent that Plaintiffs and the members of the Class purchase or rent the SCRAM Devices.

302.   Acting as reasonable consumers, Plaintiffs and the Class were unaware of the falsity of these omitted and misrepresented material facts because they justifiably relied upon Defendants' misrepresentations and omissions.

303.   Due to their justifiable reliance upon Defendants' misrepresentations and omissions, Plaintiffs and the Class purchased or rented the SCRAM Devices, and would not have done so if they had been aware of the truth.

304.   As a direct and proximate result of these unfair, deceptive and unconscionable commercial practices, Plaintiffs and the members of the Class have suffered damages in the form of money they paid to purchase or rent the SCRAM Devices (*i.e.*, restitution damages), plus additional incidental and consequential damages (*i.e.*, actual damages) resulting from the use of the SCRAM Devices. The

Plaintiffs, individually, and on behalf of the Class, seek actual damages, restitution damages, and along with reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually, and on behalf of the Class, pray for an Order as follows:

A.   Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23, and certifying the Class defined herein;

B.   Designating Plaintiffs as representatives of the Class, and their undersigned counsel as Class Counsel;

C.   Entering judgment in favor of Plaintiffs and the Class and against Defendants, jointly and severally;

D.   Ordering disgorgement of the money that Plaintiffs and the Class paid to purchase or rent the SCRAM Devices, and awarding the disgorged money as restitution damages to Plaintiffs and the Class, and any other equitable relief that may be appropriate, and interest thereon, as allowed or required by law;

E.   Awarding Plaintiffs and the Class their Actual Damages, including any additional incidental and consequential damages resulting from their use of the SCRAM Devices, and interest thereon, as allowed or required by law;

F.   Enjoining Defendants' conduct as requested herein, and ordering them to cease any and all deceptive and unfair trade practices;

G.   Awarding Plaintiffs reasonable attorneys' fees and costs, and interest thereon, as allowed or required by law; and

H.   Granting all such further and other relief as the Court deems just and appropriate.

## COUNT X
## Unjust Enrichment/Restitution
## (Based on California and Other States' Common Law)
## (On Behalf of Plaintiffs, the Nationwide Class, and All Subclasses)

305.   Plaintiffs re-allege and incorporate by reference the paragraphs of this Class Action Complaint as if set forth herein.

306.   To the extent that the Nationwide Class cannot assert fraudulent misrepresentation claims under California common law, Plaintiffs Roseanne Hansen and Jennifer Oh bring this Count, individually, and on behalf of the California Subclass, Plaintiff Linda Solits brings this Count, individually, and on behalf of the Ohio Subclass, Plaintiff Brooke Hoffman brings this Count, individually, and on behalf of the South Dakota Subclass, Plaintiff Patrick Guerrero brings this Count, individually, and on behalf of the Texas Subclass, Plaintiff Micha Bailey brings this Count, individually, and on behalf of the Louisiana Subclass Plaintiff Christina Bohnstedt brings this Count, individually, and on behalf of the Minnesota Subclass against Defendants.

307.   California law allows parties to pursue a cause of action under a theory of unjust enrichment. *In re Processed Egg Products Antitrust Litig.*, 851 F. Supp. 2d 867, 913 (E.D. Pa. 2012) (citing *Ghirardo v. Antonioli*, 14 Cal.4th 39, 57 Cal.Rptr.2d 687, 924 P.2d 996, 1002–03 (1996)). At California common law, "[t]he elements of an unjust enrichment claim are the 'receipt of a benefit and [the] unjust retention of the benefit at the expense of another.'" *Peterson v. Cellco P'ship*, 164 Cal.App.4th 1583, 1593 (4th Dist. 2008) (quoting *Lectrodryer v. SeoulBank* (2000) 77 Cal.App.4th 723, 724 (2d Dist. 2000)).

308.   Defendants also intentionally misrepresented and concealed, and continue to misrepresent and conceal, material facts concerning their ability to accurately record, store, and disseminate the data and reports generated by the SCRAM Devices.

309.   Defendants also knew that the SCRAM Devices did not have the ability to accurately record, store, and disseminate the data and reports generated by the SCRAM Devices, but Defendants concealed these facts from Plaintiff and the Class.

310.   Defendants affirmatively misrepresented and/or actively concealed material facts with the intent that Plaintiffs and the members of the Class purchase or rent the SCRAM Devices.

311.   Acting as reasonable consumers, the Plaintiffs and the Class were unaware of the falsity of these omitted and misrepresented material facts because they justifiably relied upon Defendants' misrepresentations and omissions.

312.   Due to their justifiable reliance upon Defendants' misrepresentations and omissions, Plaintiffs and the Class purchased or rented the SCRAM Devices, and would not have done so if they had been aware of the truth.

313.   Based upon the aforementioned deception in marketing and selling the SCRAM Devices, Defendants SCRAM and AMS have unjustly received and retained money belonging to Plaintiffs and the Class as a result of their wrongful conduct: their false and misleading marketing and advertising campaign for the SCRAM Devices. Each individual sale and rental nets Defendants profit at the expense of the consumer.

314.   Defendants' retention of the benefit violates the fundamental principles of justice, equity, and good conscience.

315.  Under the principles of equity, Defendants should not be allowed to keep the money belonging to Plaintiffs and the members of the Class because Defendants have unjustly received it as a result of their unlawful actions described herein.

316.   As a further direct and proximate result of these unfair, deceptive and unconscionable commercial practices, Plaintiffs and the members of the Class have suffered damages in the form of the money they paid to purchase or rent the SCRAM Devices (*i.e.*, restitution damages). Plaintiffs, individually, and on behalf of the Class seek restitution damages, along with reasonable attorneys' fees and costs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually, and on behalf of the Class, pray for an Order as follows:

A.   Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23, and certifying the Class defined herein;

B.   Designating Plaintiffs as representatives of the Class, and their undersigned counsel as Class Counsel;

C.   Entering judgment in favor of Plaintiffs and the Class and against Defendants, jointly and severally;

D.   Ordering disgorgement of the money that Plaintiffs and the Class paid to purchase or rent the SCRAM Devices, and awarding the disgorged money as restitution damages to Plaintiffs and the Class, and any other equitable relief that may be appropriate, and interest thereon, as allowed or required by law;

E.   Awarding Plaintiffs and the Class their Actual Damages, including any additional incidental and consequential damages resulting from their use of the SCRAM Devices, and interest thereon, as allowed or required by law;

F.   Enjoining Defendants' conduct as requested herein, and ordering them to cease any and all deceptive and unfair trade practices;

G.   Awarding Plaintiffs reasonable attorneys' fees and costs, and interest thereon, as allowed or required by law; and

H.   Granting all such further and other relief as the Court deems just and appropriate.

## COUNT XI
## Breach of Contract
### (Based on California and Other States' Common Law)
### (On Behalf of Plaintiffs, the Nationwide Class, and All Subclasses)

317.   Plaintiffs re-allege and incorporate by reference the paragraphs of this Class Action Complaint as if set forth herein.

318.   To the extent that the Nationwide Class cannot assert breach of contract claims under California common law, then Plaintiffs Roseanne Hansen and Jennifer Oh bring this Count, individually, and on behalf of the California Subclass, Plaintiff Linda Solits brings this Count, individually, and on behalf of the

Ohio Subclass, Plaintiff Brooke Hoffman brings this Count, individually, and on behalf of the South Dakota Subclass, the Plaintiff Patrick Guerrero brings this Count, individually, and on behalf of the Texas Subclass, Plaintiff Micha Bailey brings this Count, individually, and on behalf of the Louisiana Subclass Plaintiff Christina Bohnstedt brings this Count, individually, and on behalf of the Minnesota Subclass against Defendants.

319.   Contracts exist between the Plaintiffs, Class Members and those that are currently on SCRAM ankle monitoring with the Defendants.

320.   Plaintiffs and Class Members entered into agreements with the Defendants SCRAM and AMS for their ankle monitoring services.  Plaintiffs also entered into a contract with the Defendants that the Plaintiffs and Class Members where purchasing a product that was cost effective, reliable, and that their product could make a factual determination if the wearer consumed alcohol, or came into contact with environmental products with alcohol. None of these statements made to the Plaintiffs and Class Members in their contracts were true or correct.

321.   Under Plaintiffs and each Class members contracts, Plaintiffs and the Class Members were required to pay monies to the Defendants for their products.

322.   All conditions precedent under the contracts have been performed by Plaintiffs and the Class, including abstaining from the use of alcohol and paying their bi-weekly fees to the Defendants for the SCRAM monitoring services.

323.   Defendants SCRAM and AMS breached the terms of its standardized contracts with Plaintiffs and the Class by failing to provide them with the promised products and services as contracted.

324.   As a result of Defendants SCRAM and AMS's breach of its contracts, Plaintiffs and the Class have been damaged in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually, and on behalf of the Class, pray for an Order as follows:

A.      Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23, and certifying the Class defined herein;

B.      Designating Plaintiffs as representatives of the Class, and their undersigned counsel as Class Counsel;

C.      Entering judgment in favor of Plaintiffs and the Class and against Defendants, jointly and severally;

D.      Ordering disgorgement of the money that Plaintiffs and the Class paid to purchase or rent the SCRAM Devices, and awarding the disgorged money as restitution damages to Plaintiffs and the Class, and any other equitable relief that may be appropriate, and interest thereon, as allowed or required by law;

E.      Awarding compensatory, statutory and/or punitive damages for Defendants' breach of contract, fraudulent misrepresentation, unjust enrichment, and false promises, where such relief is permitted;

F.      Awarding Plaintiffs reasonable attorneys' fees and costs, and interest thereon, as allowed or required by law; and

G.      Provision of class notice to all members of the Class;

H.      Order Defendants to immediately cease their wrongful conduct as set forth above; enjoining Defendants from continuing to falsely market and advertise, conceal material information, and conduct business via the unlawful and unfair business acts and practices complained of herein; order Defendants to engage in a corrective notice campaign, and requires Defendants to refund to Plaintiffs and all Class Members the funds paid for the SCRAM ankle monitoring service;

I.      A declaratory judgment that Defendants have knowingly, intentionally and maliciously violated state and federal law and each of the provisions;

J.      An order requiring Defendants to pay restitution of all amounts owed to the Plaintiffs by the Defendants;

K.      For general and special damages in an amount according to proof;

L.      An award to Plaintiffs and the Class of such other and further relief as this Court deems just and proper.

///

///

///

///

///

Dated:       June 25, 2017          By:    /S/    Edwin I. Aimufua, Esq.

Edwin I. Aimufua, Esq., SBN # 186986
LAW OFFICES OF EDWIN I. AIMUFUA
17000 Ventura Blvd, Suite # 201
Encino, California 91316
(818) 855-1118 (Telephone)
(818) 855-1101 (Facsimile)
eia@aimufualaw.com

*Attorneys for Plaintiffs Rosanne Hansen,*
*Jennifer Oh, Linda Soltis, Brooke Hoffman,*
*Patrick Guerrero, Micha Bailey, Christina*
*Bohnstedt, on their own behalf, and on*
*behalf of all others similarly situated.*

## **JURY TRIAL DEMANDED**

Plaintiffs are entitled to, and demand, a trial by jury pursuant to the Seventh
Amendment to the United States Constitution.

Dated:       June 25, 2017          By:    /S/    Edwin I. Aimufua, Esq.

Edwin I. Aimufua, Esq., SBN # 186986
LAW OFFICES OF EDWIN I. AIMUFUA
17000 Ventura Blvd, Suite # 201
Encino, California 91316
(818) 855-1118 (Telephone)
(818) 855-1101 (Facsimile)
eia@aimufualaw.com

*Attorneys for Plaintiffs Rosanne Hansen,*
*Jennifer Oh, Linda Soltis, Brooke Hoffman,*
*Patrick Guerrero, Micha Bailey, Christina*
*Bohnstedt, on their own behalf, and on behalf*
*of all others similarly situated.*

PLAINTIFFS' [PROPOSED] SECOND AMENDED CLASS ACTION COMPLAINT FOR DAMAGES